CHARLES O. GRINSLADE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

THOMAS E. GRINSLADE AND CORA U. GRINSLADE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7267–71, 7268–71. Filed January 29, 1973.

*Elmer E. Lyon* and *Paul J. Corsaro*, for the petitioners.
*Thomas J. Meyer*, for the respondent.

Dawson, *Judge:* In these consolidated cases the respondent determined the following deficiencies in petitioners' Federal income taxes:

| Petitioners | Docket No. | Year | Deficiency |
|---|---|---|---|
| Charles O. Grinslade | 7267–71 | 1969 | $9,010.77 |
| Thomas E. and Cora U. Grinslade | 7268–71 | 1969 | 11,839.21 |

Certain concessions made by the petitioners and the respondent will be given effect in the Rule 50 computations. The principal issue presented for our decision is whether petitioners are entitled to deduct, as a charitable contribution under section 170, I.R.C. 1954,[1] the conveyance of part of an acre of land to the Mass Transportation Authority of Greater Indianapolis. If so, we must also determine the value of the land at the time of the conveyance.

FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The primary and supplemental stipulations of facts and the exhibits attached thereto are incorporated herein by this reference.

All three petitioners were residents of Indianapolis, Ind., when they filed their petitions in these proceedings.

Charles O. and Thomas E. Grinslade (herein called petitioners) are each 50-percent partners in a partnership doing business as Grinslade Construction Co. This partnership had been in existence for several years prior to the calendar year of 1969.

For several years prior to 1964, Grinslade Construction Co. was the owner of unimproved real estate in Marion County, Ind., fronting on 38th Street and Arlington Avenue in Indianapolis, Ind., consisting of approximately 1.195 acres. It was at the northwest corner of 38th and Arlington Avenue which was bounded on the north side by 38th Street North Drive.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

In 1968 petitioners' land was the only corner at the 38th Street and Arlington intersection that was not developed and being used as commercial property.

On the southwest corner of this intersection was a business known as Carbob Restaurant with a three-way liquor license; on the southeast corner a Sun Oil Co. service station; and on the northeast corner a Russell Stover Candy Co.

Petitioners had acquired the 1.195 acres at an approximate cost of $2,817.

Prior to 1965 several oil companies had shown an interest in this corner as a filling station site. The property was located in an area that was zoned residential but was cut off from the residential area of 38th Street North Drive which intersected the corner of the residential area causing petitioners' property to appear as a peninsula or island cut off from the rest of the residential area. It was a valuable commercial site and suitable for a filling station site since it was bounded on three sides by streets. It was not suitable as residential property. Its highest and best use was as a service station.

The property also had a drainage ditch known as Pogue's Run running across its southeast corner.

The City of Indianapolis, through its board of public works, on December 9, 1965, condemned a portion of the land off the east side of the property for the purpose of widening Arlington Avenue.

Petitioners contested the amount of the condemnation award, and the case ultimately found its way to the Marion County Circuit Court at Indianapolis, Ind. Such case was continued on the docket and not disposed of until a later case was dismissed.

On April 3, 1968, petitioners executed an option to lease with Marathon Oil Co., which option was accepted by Marathon on June 14, 1968. The lease agreement provided for a long-term rental for 15 years at a rate of at least $500 per month.

On May 6, 1968, after the option was granted but before its exercise on June 14, 1968, petitioners received a letter from the Mass Transportation Authority of Greater Indianapolis (herein called M.T.A.). The letter, which was signed by J. D. Hufford, Right of Way Engineer, enclosed proposed deeds and a proposed grant of a temporary right-of-way. The letter reads, in part, as follows:

It has been determined that property belonging to you will be needed for the construction of the above captioned project. We have determined the fair market value of your property required for this vital public improvement project.

Based upon an approved appraisal, I am authorized and do hereby offer Fifty-three Thousand Dollars ($53,000.00) for the purchase of your property. You will be permitted a reasonable period of time to respond to this offer.

You may expect payment within approximately thirty (30) days after signing the documents accepting this offer.

In the event you do not elect to accept this offer, your property will be acquired by due process of law. Court proceedings will be initiated by the Chief Counsel of the Mass Transportation Authority of Greater Indianapolis.

Your rights are protected by law which provides for the following procedure:

1. The court will appoint three (3) feeholders to appraise your property.

2. The authority will deposit the amount of the appraisal with the court. You are not required to vacate your property or surrender possession prior to these funds being made available to you in accordance with Paragraph 3 below.

3. You may, subject to the approval of the court, withdraw from the fund deposited with the court; however, such withdrawal does not finalize the court proceedings. The amount to be received by you will be determined by a jury decision, after both parties have had the opportunity to present legal evidence supporting their opinions of fair market value, and may be more or less than the Authority's offer.

4. You have a right to testify in court as to the fair market value of your property.

5. You may, at your own expense, employ appraisers to appraise your property and counsel to represent you in court.

This information provides you with a firm offer in writing and briefly outlines the procedures and your rights when we acquire part or all of your property. A representative from this office will contact you concerning this matter.

We hope this information, along with the pertinent facts as verbally explained by our representative, will assist you in reaching an early decision.

Legal descriptions of the property showed that parcel 1 was 0.738 acre, more or less, and was to become a part of the permanent right-of-way. Parcel 1 A was 0.456 acre, more or less, and was for a temporary right-of-way for the relocation of the channel, Pogue's Run. The $53,000 was offered for the acquisition of both. The petitioners did not accept this offer.

On July 26, 1968, the petitioners, acting through Lester Irons, attorney in fact, filed a request for approval of the Plat Committee of the Metropolitan Plan Commission, and on August 15, 1968, similarly filed a petition with the board of public works for the vacation of the south one-half of 38th Street North Drive between the east property line of Campbell Avenue and the west property line of Arlington Avenue. This is the portion of 38th Street that was immediately north of petitioners' property that separated it from the residential area.

The Plat Committee of the Metropolitan Plan Commission approved the vacation on November 6, 1968.

On November 14, 1968, the executive director of the Metropolitan Plan Commission appealed the decision of the Plat Committee to the Metropolitan Plan Commission for a hearing de novo.

The Metropolitan Plan Commission denied petitioners' request for vacation of 38th Street North Drive.

Petitioners' attorney then filed a new request with the Plat Committee for the vacation of all of 38th Street North Drive. This was finally approved by the board of public works and the Plat Commit-

tee of the Metropolitan Plan Commission on November 6, 1969, and the board of public works assessed the petitioners $4,000 for benefits received thereby. In lieu of paying the assessment, the board provided that the petitioners could convey the 0.823 acre needed by M.T.A. for reconstruction of the intersection.

On February 7, 1969, the M.T.A. filed a condemnation suit against petitioners in Superior Court, Marion County, docket No. S669–136, for 0.738 acre of the 1.195 acres.

Petitioners filed objections to the complaint on the grounds that the engineering plans of the M.T.A. would require a total take of the 1.195 acres. The M.T.A. amended its complaint to take the entire land of the petitioners.

The court appointed appraisers and they returned an award to petitioners of $125,000 in March 1969. Petitioners' appraiser had appraised the property at $140,000.

After this award was returned, petitioners' attorney, William Le-Mond, sought to work out an arrangement with the various agencies involved in order to satisfy the requirements of the M.T.A. at a minimum cost to it and to compromise or dispose of all the matters then pending, including the necessary approvals for the development of a service station site.

The M.T.A. needed 0.738 acre along 38th Street and Arlington Avenue. It later developed that it needed 0.823 acre.

The M.T.A. needed the vacation of the entire 38th Street North Drive in order to relocate a bridge on Arlington Avenue. This bridge would close the end of 38th Street North Drive that intersects Arlington. The M.T.A. also needed the storm drainage easement over the balance of the 1.195 acres in order to relocate Pogue's Run. The M.T.A. also needed a temporary right-of-way over petitioners' land during the construction period.

On May 7, 1969, petitioners executed a right of entry to M.T.A. which provided as follows:

WHEREAS, the Mass Transportation Authority of Greater Indianapolis, hereinafter called "M.T.A.," is contemplating construction work on Arlington Avenue and East 38th Street which will require acquisition of right of way across certain lands of the undersigned in Marion County, Indiana.

AND WHEREAS, it is desirable that such construction be commenced as rapidly as possible, but that certain questions have arisen in the negotiations between the M.T.A., and the undersigned resulting from institution of condemnation proceedings in the Marion County Superior Court, Cause S669 136, and an effort to amicably settle this dispute involves making a beneficial use of the undersigneds' residual lands through the cooperation of several government agencies regulating land use, street vacations, drainage and flood control which will require additional time by both parties, and it is desired that the said questions be resolved, but that it is desirable that the construction of the highway project known as MTA Project CP 68–1 be not delayed.

Now, THEREFORE, be it agreed by and between the undersigned and the M.T.A. that for and in consideration of the cooperation and assistance of M.T.A. in seeking a beneficial use of the undersigneds' residual lands remaining after the taking for said MTA Project CP 68-1 and the further benefits that may be derived by both parties by an extended period in which to resolve the questions of residual land use, the undersigned does hereby grant a right of entry on and across its lands affected by the above project which are more particularly described in the amended plans of MTA Project CP 68-1 as approved by the Indiana State Highway Commission on the ———— day of April, 1969, and on file in the offices of MTA and by this reference incorporated herein and made a part hereof.

That this right of entry shall permit the M.T.A. through its employees, agents and contractors to proceed with the construction of the highway and to do such acts thereon as would be permitted if the right of way had actually been obtained. That the undersigned waives no right to make claim for any damages for any acts which are outside the right of way limits and which would normally be the basis for an action for damages.

Neither party hereto waives any of the rights in the event negotiation fails, and it is necessary that the property be condemned.

Further, it is acknowledged by M.T.A., upon acceptance hereof, that the award of the court-appointed appraisers in said condemnation suit being Cause No. S669 136 is One Hundred Twenty Five Thousand ($125,000.00) Dollars and if, at any time any government agency having jurisdiction over the use of the undersigneds' residual lands disapproves the enclosure of the relocated drainage ditch traversing the property and the construction of a Marathon Station thereon, then in that event, M.T.A. shall immediately tender said sum of $125,000.00 to the Clerk of the Court and this Right of Entry shall automatically terminate and become nullity.

The undersigned agrees to deliver possession of said property to the M.T.A. as of May 8, 1969.

William LeMond, on behalf of the petitioners but subject to their final approval, offered to exchange a portion of the land along 38th Street west of the proposed filling station site consisting of 0.395 acre for the vacation of 38th Street North Drive and $10,000, to donate 0.428 acre along the filling station site on 38th Street and Arlington Avenue, to donate a storm drainage easement over the land retained by petitioners, and to donate a temporary right-of-way over the land retained by petitioners.

Marathon Oil Co., through its attorney, offered at its expense to relocate Pogue's Run ditch and box it with concrete construction. Marathon was interested in doing this only if a zoning variance was granted permitting the construction of a filling station on the land retained; also, because of the amount of land needed by M.T.A. a filling station site was not feasible unless 38th Street North Drive was vacated, permitting the south half of it to revert to petitioners.

Petitioners' offer through Mr. LeMond was similarly contingent upon the vacation of 38th Street North Drive, payment of $10,000 in cash, the dismissal of the two condemnation proceedings, and the vari-

ance of the zoning on the land retained by them. Mr. LeMond advised the petitioners of what he had tentatively worked out as a compromise of the condemnation proceedings.

Petitioners had the alternative of letting the condemnation case proceed, or of adopting and following the arrangements Mr. LeMond had worked out for a total disposition of the matter.

Petitioners sought separate tax counsel for advice on the alternatives, and they were advised that the fair market value of land donated to an agency of Government was tax deductible.

Petitioners followed the recommendations of Mr. LeMond and on December 22, 1969, by one deed for a stated consideration of $10,000 deeded 0.395 acre to the M.T.A., and by another deed, which stated "as an outright gift without consideration," conveyed 0.428 acre to the M.T.A. They also granted the M.T.A. a storm drainage easement and gave M.T.A. a temporary right-of-way over their land.

Petitioners had the 0.428 acre appraised by the same appraiser who had been employed by them throughout the proceedings. He appraised the value of the "gift" at $57,000, and petitioners' partnership, Grinslade Construction Co., claimed a charitable deduction for that amount in its return for 1969. On their individual income tax returns the petitioners each claimed one-half as a charitable contribution.

On October 3, 1969, prior to the deeds and grant of easement and right-of-way, petitioners filed a petition for variance of zoning ordinance with respect to the subject property wherein they requested a variance from existing D–5 classification to permit construction and operation of a gasoline service station with two advertising signs as indicated on the plot plan and offstreet parking.

On November 4, 1969, the Metropolitan Board of Zoning Appeals met and by unanimous vote approved petitioners' petition and granted the variance for the use and classification sought, subject to the condition that "the right of way will be granted by the Grinslades for construction of improvements on Arlington and 38th Street."

The deeds and easement grant, while dated December 16, 1969, were not recorded until December 22, 1969.

On December 18, 1969, M.T.A. filed a dismissal of its complaint for appropriation of real estate against petitioners in the Superior Court, Marion County, docket No. S669–136, reciting that "said cause of action now having been settled to the satisfaction of all parties."

On December 23, 1969, the board of public works notified the city controller of the "satisfaction of the assessment," and on December 31, 1969, it filed its certificate of the vacation of 38th Street North Drive with the recorder for Marion County, Ind.

Marathon Oil Co. relocated Pogue's Run ditch and boxed it in concrete at a cost to Marathon of $109,116.84. Marathon, at its expense,

constructed a service station on that part of the original 1.195 acres retained by petitioners and the property acquired through the vacation of 38th Street North Drive.

The 1.195 acres owned by petitioners were assessed for real estate tax purposes during 1968 at $500, and there was paid a real estate tax of $53.84 with respect to that year.

After the construction of the improvements, the land and improvements were reassessed at $18,436, and at the 1968 tax rate a tax of $1,985 per year will be paid on the land retained by petitioners.

### OPINION

The key issue confronting us in these cases arises out of a complex and protracted series of interrelated negotiations and arrangements between the petitioners and various agencies of the City of Indianapolis which extended over a considerable period of time. The facts are fully set out in our findings and will not be repeated in this opinion.

The parties agree that the Mass Transportation Authority of Greater Indianapolis (M.T.A.) is an organization of the character described in section 170(c)(1) of the Code and that the land conveyed to the M.T.A. was to be used exclusively for public purposes. Thus the crucial question is whether or not the conveyance of the 0.428 acre of land was a "contribution or gift" within the meaning of section 170.[2]

The general principles relating to the deduction of a charitable contribution are summarized in our recent opinion in *Larry G. Sutton*, 57 T.C. 239, 242–243 (1971), as follows:

The phrase "charitable contribution," as used in section 170, is synonymous with the word "gift." *Harold DeJong*, 36 T.C. 896, 899 (1961), affd. 309 F. 2d 373 (C.A. 9, 1962) ; *Jordon Perlmutter*, 45 T.C. 311 (1965) ; *James A. McLaughlin*, 51 T.C. 233, 234 (1968), affirmed per curiam (C.A. 1, 1969, 23 A.F.T.R. 2d 69–1763, 69–2 U.S.T.C. par. 9467) ; *Harold E. Wolfe*, 54 T.C. 1707, 1713 (1970). A gift is generally defined as a voluntary transfer of property by the owner to another without consideration. *Harold DeJong, supra* at 899. This definition, how-

---

[2] SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.

    (a) ALLOWANCE OF DEDUCTION.—

        (1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowed as a deduction only if verified under regulations prescribed by the Secretary or his delegate.

      \*      \*      \*      \*      \*      \*      \*

    (c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—

        (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.

ever, does not refer to consideration in a common-law sense, but rather in a more colloquial sense. Cf. *Commissioner* v. *Duberstein*, 363 U.S. 278, 285 (1960); *Harold E. Wolfe, supra* at 1713. "If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift." *Harold DeJong, supra* at 899; *Bogardus* v. *Commissioner*, 302 U.S. 34, 41 (1937).

Determining a taxpayer's incentive, motive, or purpose in making a gift is a factual problem. The inquiry, however, does more than probe the subjective attitude of the donor and the extent to which public-spirited and charitable benevolence prompted the transfer. The inquiry seeks to expose the true nature of the transaction: whether the "gift" was made "in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow directly or indirectly, which otherwise might not be forthcoming." *Stubbs* v. *United States*, 428 F. 2d 885, 887 (C.A. 9, 1970).

It is the petitioners' primary position that they did in fact make a gift to the M.T.A. in 1969 of the 0.428 acre of land having a fair market value of $57,000; that the gift was made voluntarily and exclusively for public purposes; that the gift was made with no expectation of financial return commensurate with the amount of the gift; that the City of Indianapolis and the public generally received a substantial benefit; and that the petitioners were only incidentally benefited by such gift. Alternatively, it is contended that petitioners, through their partnership, made a bargain sale to a qualified charitable organization and are therefore entitled to deduct their share of the "net gift" which equals $57,000.

Respondent's main position is that the conveyance of the 0.428-acre parcel was made by petitioners with the expectation of receiving financial benefit commensurate with the value of the property transferred. He also contends, but only in the alternative, that the conveyance was involuntary because it was made under the threat of condemnation. Hence respondent asserts that the conveyance of such land was not a "charitable contribution," citing in support of his position *Larry G. Sutton, supra,* and *Stubbs* v. *United States*, 428 F. 2d 885 (C.A. 9, 1970).

We start with the realistic and practical view that the conveyance of the 0.428 acre was only a part of the total transaction which the petitioners negotiated and consummated with the City of Indianapolis. We are not inclined to treat it as a separate and distinct transaction. At no time did the petitioners offer to make an outright conveyance of the 0.428-acre parcel to the M.T.A. without any conditions or consideration. From the time of its inception the entire transaction was handled as an inseparable package. Petitioners bargained for and received the $10,000 cash payment, the vacation of 38th Street North Drive, the zoning variance, and the dismissal of both condemnation suits in exchange for the total land conveyed to the M.T.A. In their reply brief the petitioners acknowledge that treating the conveyance of the 0.428-

acre parcel as a part of the total transaction seems "justified" but that it makes no difference because they have demonstrated that they made a voluntary transfer for less than a valuable consideration to a qualified charitable organization and that the difference ($57,000) between the value of the property transferred and the value of the consideration received is deductible.[3]

On this record we are persuaded by respondent's arguments that the petitioners expected to receive and did in fact receive financial benefits commensurate with the value of the property transferred. In *Stubbs* v. *United States, supra,* the taxpayer had dedicated a strip of land for use as a public road in order to facilitate his efforts to have his remaining land rezoned for use as a trailer park. The Court of Appeals for the Ninth Circuit, in affirming the District Court, held that the primary incentive of the taxpayer in making the transfer was to enhance the value and use of his remaining property and to obtain the desired zoning permits. Consequently, the claimed charitable contribution deduction was denied. Also, in *Larry G. Sutton, supra,* the taxpayer owned property bordering on a street which the City sought to widen. At that time the taxpayer had not listed the property for sale nor negotiated with the oil company that eventually constructed a service station on the site. The taxpayer conveyed an easement to the City to permit the widening of the street. Shortly thereafter he obtained zoning approval for the commercial development of his land that could not have been obtained unless the easement had been granted. In denying the charitable contribution, this Court concluded that the conveyance was made "in the expectation of the receipt of specific direct economic benefits in the form of additional utility and value which may be realized through the commercial development of the remainder of the land." *Larry G. Sutton, supra* at 244.

Similar to the *Sutton* case, the acquisition of favorable zoning and the economic benefits to be derived therefrom were important considerations prompting the petitioners' transfer of the claimed gift property. A zoning change was essential to petitioners' plans to develop a service station on the site because existing zoning would permit only residential construction. Petitioners knew that a request for a zoning variance would encounter stiff resistance from the metropolitan planning department. Traffic congestion at the intersection of 38th Street and Arlington Avenue had already reached a critical point; and another service station at the intersection would only aggravate the congestion. Thus petitioners' plans for construction of a service

---

[3] Congress intended for taxpayers to be entitled to deduct any charitable contributions "which are made with no expectation of a financial return commensurate with the amount of the gift." See H. Rept. No. 1337, 83d Cong., 2d Sess., p. A44, and S. Rept. No. 1622, 83d Congress., 2d Sess., p. 196.

station on their site were inextricably tied to the City's plans to widen the intersection.

The solution worked out between the representatives of petitioners and the City permitted both parties to accomplish their goals. Petitioners agreed to convey to the M.T.A. the footage needed to widen the intersection. In return the City agreed to grant the zoning variance to allow petitioners to construct the service station. On November 4, 1969, the Metropolitan Board of Zoning Appeals approved the zoning variance subject to the express condition that "The right of way will be granted by the Grinslades for construction of improvements on Arlington Avenue and 38th Street."

The economic benefits obtained by petitioners from the rezoning were even more specific and certain than those present in the *Sutton* case. In *Sutton*, the taxpayer had yet to place his property in the market place. Here the petitioners had already executed a valuable lease with the Marathon Oil Co. at the time the variance was sought and obtained. The economic benefits to petitioners were assured, not merely anticipated.

Petitioners claim that they received no additional consideration by the zoning variance granted them by board of zoning appeals since the board could not have constitutionally withheld the variance, and therefore the conveyance was neither made under compulsion nor in the anticipation of additional economic benefit. They point out that in Indiana there are no statutes, constitutional provisions, or ordinances giving a zoning board authority to require the granting of rights-of-way or the conveyance of property in order to obtain zoning variances. See *Town of Homecroft* v. *MacBeth*, 148 N.E.2d 563 (Ind. 1958). We agree that the conveyance was not made under compulsion (there being no "trade off" of the land for the zoning variance), but the zoning variance was nonetheless an additional financial benefit anticipated by petitioners as a result of the conveyance of the claimed gift property.

Petitioners suggest in their brief that they conducted settlement negotiations with the City primarily for the City's benefit, and that their attorney, William LeMond, was seeking a reduction of damages that the City would have to pay. We cannot accept this suggestion, especially in view of the fact that, after the return of the appraisers' award of $125,000 as damages in the condemnation proceeding, the petitioners appealed the decision in an effort to obtain still greater damages from the City. As we see it, the reduction of damages which the City would have had to pay, which the petitioners now claim as their own purpose, was only incidental to their primary purpose of securing all necessary approvals for the development of a service station on their site.

In light of all the facts and the totality of the transaction, we think it clear that there was no charitable contribution made by the petitioners. They began with 1.195 acres of land, part of which had the potential of being developed as a service station site, and part of which was excess land of negligible utility and value. In the end they still had the service station site, together with all the necessary approvals from the City for the development of the site, and $10,000 in cash in place of the excess land. Petitioners and the City had reached a compromise advantageous to both—a quid pro quo. The City received 0.823 acre of petitioners' land which included the 0.428-acre parcel. The petitioners received $10,000 in cash, relief from the $4,000 assessment, vacation of the south portion of 38th Street North Drive, dismissal of the two condemnation suits, and the variance in zoning. They entered into the entire transaction with the expectation of financial benefits commensurate with the value of the property conveyed. Accordingly, they are not entitled to a charitable contribution under section 170.

Since we agree with respondent's principal position, we need not consider his alternative argument that the conveyance of the 0.428-acre parcel was made involuntarily.

We turn next to petitioners' secondary position that the transaction can be treated as a bargain sale to the City of Indianapolis. Their argument is stated as follows:

The fair market value of the .428 acres was $57,000.00. Respondent offered no opinion evidence to the contrary. The city officials and Mr. LeMond valued the .395 acres at $17,000.00 and they valued the vacated portion of 38th Street at $7,000.00. Hence, petitioners sold and exchanged property to the M.T.A. worth $74,000.00 for $10,000.00 cash and property worth $7,000.00, leaving the difference of $57,000.00 as the gift portion of a bargain sale.

In order for a conveyance to constitute a charitable contribution as a bargain sale the seller must make the conveyance with the requisite charitable intent and the fair market value of the property on the date of the sale must in fact exceed the sales price. *William Waller*, 39 T.C. 665, 677 (1963). In our judgment there was no bargain sale here because the conveyance in question was not made for a "charitable" purpose, but rather with the expectation of receiving financial benefits commensurate with the property conveyed. Petitioners have not shown a public-spirited, altruistic, benevolent, or charitable purpose which they sought to serve through the conveyance of the 0.428 acre of land. The requisite charitable intent is lacking.

Having determined that the conveyance in question does not qualify as a charitable contribution, it also becomes unnecessary for us to consider respondent's contention that the value of the 0.428 acre of land was only $4,000 instead of the $57,000 claimed by the petitioners.

To reflect concessions made by the parties and our conclusions herein,

*Decisions will be entered under Rule 50.*