**George A. and Meryl COLLMAN,
Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.**

**No. 73–2797.**

United States Court of Appeals,
Ninth Circuit.

Feb. 26, 1975.

1264

Donn Kemble (argued), Irvine, Cal., for petitioners-appellants; James Toledano, Los Angeles, Cal., on the brief.

George G. Wolf (argued), Washington, D. C., for respondent-appellee.

## OPINION

Before KOELSCH and CHOY, Circuit Judges, and MARKEY,* United States Court of Customs and Patent Appeals.

CHOY, Circuit Judge:

The Collmans appeal from a Tax Court decision allowing them only a partial charitable tax deduction for dedicating 2.549 acres of land for public roadway purposes. We reverse in part.

### Factual Background

In October, 1965 Collman, a citrus farmer, purchased 15 acres of real property (hereinafter "the 15-acre grove" or the "grove" in Orange County, close to the City of Anaheim boundary line. The 15-acre grove was a rectangular piece of property, approximately 625 feet by 1000 feet. On the south it was bounded by Orangethorpe Avenue. On the east and west it was bounded by groves owned by a man named Morlock. A street named Orchard Drive originated north of the grove and ran south until it reached the center of the northern border of the grove. From that point it turned and ran east, for approximately 690 feet, at which point it again turned south, eventually terminating at Orangethorpe Avenue.

The grove was zoned for agricultural use. After purchasing it, the Collmans invested time and money to improve the grove for the growing of orange trees. In 1965, appellants netted a profit on their farm operation, but in each of the succeeding years they suffered a loss.

In 1965, Orange County decided to acquire a portion of the grove in order to realign Orchard Drive and extend it through the middle of the grove to connect up with Orangethorpe Avenue. The County Master Plan showed the ultimate width of the realigned road to be 80 feet; but because traffic in 1965 did not warrant such a wide road, the County planned to build a road only 60 feet wide (the "interim width") and sought from appellants a strip of land with such dimensions.

The County did not move immediately for condemnation. Then in the middle of 1967, the County notified Mr. Collman that it was prepared to proceed with the realignment and that it planned to expand Orangethorpe Avenue from its then 50 foot width to a "new interim width" of 70 feet. The ultimate width for Orangethorpe, according to the County Master Plan, was 95 feet.

During several conversations between County agents and Collman, the possibility of his dedicating to the County land necessary to construct the two roads to ultimate widths was discussed. The discussions resulted in an agreement on October 24, 1967 whereby Collman agreed to dedicate the land necessary to construct realigned Orchard and Orangethorpe to their ultimate widths in exchange for the County's promise to construct both roads to the ultimate, as opposed to interim, widths and to construct gutters and curbs. Although dedication of the land was not conditioned on an agreement by the County to rezone the grove, the road construction satisfied a County ordinance prohibiting commercial use of land unless adjacent roads were of ultimate widths.

Of the 2.549 acres conveyed, 1.759 acres (valued at $33,314) would have been required to build realigned Orchard to its interim width and to expand Orangethorpe to its new interim width. In other words, the 1.759 acres represent the amount of land the County would have condemned had not Collman agreed

---

* The Honorable Howard T. Markey, Chief Judge, U.S. Court of Customs and Patent Appeals, sitting by designation.

to dedicate it. The additional .79 acre represents the amount of additional land necessary to construct both roads from their interim to ultimate widths. The further cost to the County to construct both roads beyond their interim widths, including the cost of curbs and gutters, was $20,711.

In March 1969, almost 17 months after the agreement with the County and dedication of the right-of-way, Collman, apparently at the urging of his neighbor Morlock, joined with him in a petition to the City of Anaheim to annex certain land including the western portion of the grove. If appellant planned to develop part of the grove for residential or commercial uses, annexation was essential because only the City could provide sewer, water, and power facilities for the area. Development was also contingent upon compliance with a city ordinance which prohibited commercial use unless abutting roads were built to their ultimate widths, 10 additional feet of roadway were dedicated to the City for sidewalks and construction of the sidewalks were guaranteed.

In the summer of 1969, Collman petitioned the City for a zoning classification change for the northwest corner of the grove in the hope of obtaining a service station site and petitioned for a rezoning of the entire eastern portion of the grove. Collman agreed to dedicate land for sidewalks and to guarantee their construction, and in January 1970 the City approved annexation and reclassification of the entire 15-acre grove for commercial and residential uses.

On their 1967 income tax return, the Collmans valued the property dedicated at $49,710.02, subtracted therefrom $20,-711.00 as the value of additional improvements provided by the County pursuant to the agreement, and took the difference ($28,999.02) as a charitable deduction.

### Prior Proceedings

The Commissioner disallowed any charitable deduction for the dedicated right-of-way. In their petition to the Tax Court, the Collmans placed the value of the property at $50,114.00 and, arguing there should be no offset, claimed the entire value as a charitable contribution.

Reversing the Commissioner's decision, the Tax Court allowed a partial charitable deduction for the dedication of the roadways. The Tax Court held that the Collmans were entitled to deduct only the value of 1.759 acres ($33,314), less the cost to the County of constructing the roadways beyond their interim widths with curbs and gutters ($20,711). The conveyance of the additional .79 acre used to build the roads to their ultimate widths did not constitute a charitable contribution, the Tax Court found, because that conveyance was made for the business purpose of obtaining desired zoning changes.

The Government did not cross appeal from the decision below, and consequently, there are only two issues presented by this appeal: 1) whether the Tax Court's finding as to Collman's motivation in dedicating the additional .79 acre was clearly erroneous; and 2) whether the Tax Court properly offset any allowable deduction by the value of additional construction work performed by the County at Collman's request.

### Donative Intent

 Section 170(a) of the Internal Revenue Code of 1954 allows a deduction for charitable contributions, and section 170(c) specifically refers to charitable contributions to political subdivisions.[1]

---

1. Sec. 170 *Charitable, Etc., Contributions And Gifts.*

 (a) Allowance of deduction.—

 (1) General rule.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year.

. . .

 (c) Charitable contribution defined.—For purposes of this section, the term "charita-

It is well settled that the term "charitable contribution" as used in section 170 is synonymous with the word "gift". De-Jong v. Commissioner of Internal Revenue, 309 F.2d 373 (9th Cir. 1962). "A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor. If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift." Harold De-Jong, 36 T.C. 896, 899 (1961), aff'd, 309 F.2d 373 (9th Cir. 1962). *Accord,* Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 285, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). Stated somewhat differently, the transfer does not constitute a gift where it is made "in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow directly or indirectly, which otherwise might not be forthcoming." Stubbs v. United States, 428 F.2d 885, 887 (9th Cir. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971).

■ The critical consideration, therefore, in determining the existence of a statutory gift or charitable contribution is the transferor's *intention. Duberstein, supra,* at 285–86, 80 S.Ct. 1190. Since a decision as to intent or motive necessarily must be based on the fact finder's experience with human conduct as applied to the totality of the facts in each case, primary weight in this area must be given to the fact finder's conclusions. *Id.* at 289, 80 S.Ct. 1190, 4 L.Ed.2d 1218. Thus, appellate review of determinations of charitable or donative intent is quite restricted. Where the trial has been by a judge without a jury, the judge's findings must stand unless "clearly erroneous." Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the *reviewing* court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

■ The "clearly erroneous" rule applies also to factual inferences from undisputed basic facts, *id.* at 394, 68 S.Ct. 525. In this case, therefore, our inquiry is limited to a determination whether the Tax Court clearly erred in inferring from all the facts that Collman dedicated the additional land (the .79 acre) needed for expanding the roads to their ultimate widths in order to obtain direct economic benefits (i. e., desired zoning changes).

In arguing that the Tax Court's finding is not clearly erroneous, the Government points to several undisputed items of evidence which tend to support the Tax Court's conclusions: 1) conveyance of the additional .79 acre which completely fulfilled County reclassification requirements and partially satisfied City requirements; 2) Collman's petition to the City, seventeen months after the transfer, for rezoning of the grove for commercial uses; 3) net farm losses incurred by Collman in the year preceding and the year of the transfer; and 4) Collman's awareness at the time of the conveyance that land near his grove was being developed, although more quickly in a direction away from the grove.

Apart from these undisputed facts, the Tax Court made a critical finding bearing on appellant's motivation in dedicating the land—that Collman at the time of the conveyance was "aware" of local ordinances requiring construction of roads to ultimate widths before rezoning could be approved. That finding, however, is completely without factual support. The only testimony even relating to Collman's knowledge of the ordinances is the following exchange which took place at the Tax Court hearing in 1972:

ble contribution" means a contribution or gift to or for the use of—

(1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.

Government: Isn't it true that you would have to dedicate the right of way and improve the streets as a condition of rezoning?

Collman: That's what they tell me *now*.

Tr. 83 (emphasis added).

■ The Tax Court made no finding as to Collman's lack of credibility, and even if it did, mere disbelief in appellant's answer cannot support on its own an affirmative finding that Collman did know about the ordinance. *See* Schwab v. Bullock's Inc., 508 F.2d 353, at 355 (9th Cir. 1974).

Although the other facts referred to by the Government (and relied upon by the Tax Court) are undisputed and we accept them as given, we do not accept the Government's view of the reasonable inferences that may be drawn from them. Collman's farming losses and knowledge of nearby land development are not very significant when considered along with the fact that Collman was a life-long citrus farmer who had invested time and money in improving the grove for agricultural purposes after he acquired it.

Arguing that appellant's economic motivation may be inferred from the existence of the zoning ordinances and his attempt to rezone the land after the dedication to the County, the Government relies primarily on Larry G. Sutton, 57 T.C. 239 (1971), a Tax Court decision cited by the court below. In that case, the taxpayer conveyed to the City of Westminster, California, an easement over a strip of land for use in widening a street adjoining his property. The city had a master plan to widen the road but no funds for condemnation of the land necessary for road construction. At the time of conveyance Sutton, a real estate appraiser and a member of the city planning commission, was familiar with a local ordinance providing that no commercial building might be constructed on land in designated zones unless abutting streets were of prescribed widths or the owner dedicated or offered a right-of-way sufficient for such widths. Ten months after the transfer to the city, an oil company contacted Sutton in order to lease a gas station site on his land, and several months later Sutton and the company entered into a lease agreement. Finding that the dedication to the city was made in expectation of receipt of economic benefits (i. e., increased value in land resulting from its reclassification), Stubbs v. United States, 428 F.2d 885, 887 (9th Cir. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971), the Tax Court disallowed any charitable deduction.

Although *Sutton* and this case appear similar, several critcal factors distinguish them: 1) unlike Sutton, who was a real estate appraiser and member of the city planning commission and familiar with the local zoning ordinances, Collman was a life-long citrus farmer who apparently had no knowledge of the local ordinances when he conveyed the right-of-way; 2) whereas Sutton approached the City of Westminster with the conveyance and street widening idea, there is no evidence that Collman would ever have dedicated any part of the right-of-way had not the County first initiated condemnation proceedings; 3) and most importantly, where conveyance of the roadway made Sutton's land *immediately* eligible for commercial zoning, Collman could not develop his land until the City approved annexation and until he complied with a City ordinance requiring dedication of another ten feet of roadway and construction of sidewalks.

■ Apart from these distinguishing facts, there is another equally important reason why we decline to apply *Sutton* to this case. The *Sutton* court, we feel, drew impermissible inferences from the existence of a local zoning ordinance and from the taxpayer's attempt after the conveyance to develop the land. The mere existence of a zoning ordinance like the one in *Sutton* or the two ordinances in this case cannot be sufficient evidence of economic motivation because, otherwise, it would be impossible for a person subject to such ordinance ever to make a charitable dedication of a right-of-way.

In urging this court to follow *Sutton,* the Government also emphasizes the fact that in *Sutton* and this case the taxpayer only "several months" after the conveyance made moves towards development of his property. Those "several months", however, were in fact ten months in *Sutton* and seventeen months in this case. Where the charitable dedication of a roadway is at issue, a seventeen month gap between the date of conveyance and the first move towards land development is too great to support an inference that the transfer was made in expectation of zoning changes for commercial development.

▇▇▇▇ Absent evidence that Collman was aware of the local zoning ordinances and that he sought zoning changes in exchange for the roadway or otherwise expected direct economic benefits to result from the conveyance,[2] we are left with the definite and firm conviction that the Tax Court erred in finding that Collman's conveyance of the .79 acre lacked donative or charitable intent.[3]

United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

*Offset to the Charitable Contribution*

▇▇▇ Appellant's argument that his claimed charitable deduction should not be diminished by the value of additional construction performed to widen the road is without merit. Collman expressly conditioned the dedication of the land on the County's agreement to pave the roads from their interim to ultimate widths and to construct gutters and curbs. Thus, the $20,711 cost of additional work performed on the .79 acre of land plainly represents consideration flowing to Collman that must be deducted from the value of the dedicated land. *See* DeJong v. Commissioner of Internal Revenue, 309 F.2d 373, 379 (9th Cir. 1962).

Affirmed in part, reversed in part and remanded,[4] the parties to bear their own respective costs.

**2.** In every reported tax decision (except *Sutton*) disallowing a charitable deduction for dedication of land to a political subdivision, the taxpayer received in exchange either a desired zoning change or some other direct economic benefit. Stubbs v. United States, 428 F.2d 885 (9th Cir. 1970), cert. denied, 400 U.S. 1009, 91 S.Ct. 567, 27 L.Ed.2d 621 (1971) (dedication of land conditioned on receipt of favorable zoning); United States v. Transamerica Corp., 392 F.2d 522 (9th Cir. 1968) (private roadway conveyed on understanding that city would improve and maintain it as a public street to taxpayer's benefit); Taynton v. United States, 5 Am.Fed.Tax R.2d 1466 (E.D.Va.1960) (land donated pursuant to sales contract with third party and new road would economically benefit taxpayer's other property); Karl D. Pettit, 61 T.C. 634 (1974) (land dedicated in exchange for subdivision concession from local planning board); Charles O. Grinslade, 59 T.C. 566 (1973) (land dedicated in exchange for money, other land for development purposes, and zoning variances); Ackerman Buick, Inc., 1973 P–H Tax Ct. Mem. ¶ 73,224 (1973), appeal dismissed, (8th Cir., July 26, 1974) (dedication of roadway in exchange for zoning changes); Jordon Perlmutter, 45 T.C. 311 (1965) (dedication in order to obtain approval of subdivision).

**3.** There being insufficient evidence of business motivation on Collman's part, we accept his undisputed testimony that the dedication was made in order to avoid a future condemnation suit over the .79 acre of land and to take a tax deduction to offset large capital gains received in the tax year. Neither purpose prevents treatment of the conveyance as a charitable contribution.

**4.** It is not clear from the record what value the Tax Court or the parties attached to the additional .79 acre, and for that reason we remand for a determination of its fair market value. The value appears to be $16,396.02, which is the difference between the value of the 2.549 acres as originally claimed by the Collmans ($49,710.02) and the value of the 1.759 acres as determined by the court ($33,314.00). However, in its opinion the Tax Court implied that the fair market value of the .79 acre was in fact $16,669 (R.T. at 39). The picture is further muddled by the fact that the Collmans at one point changed their original estimate of the value of the entire tract conveyed. Although originally claiming the value to be $49,710.02, they then revised the figure upward to $50,114.00 in their petition to the Tax Court (R.T. at 3), and have since reverted to use of the original figure. (*See* Appellants' Brief at 3)