JAMES E. FORKAN and MAXINE V. FORKAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Forkan v. Commissioner
Docket No. 10932-75.
United States Tax Court
T.C. Memo 1977-195; 1977 Tax Ct. Memo LEXIS 245; 36 T.C.M. (CCH) 798; T.C.M. (RIA) 770195; June 23, 1977, Filed Jeffrey E. Boly, for the petitioners. James J. Posedel, for *246 the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Year
Deficiency
1972
$3,606.07
1973
$ 907.02
The issue for decision is whether the dedication of certain property to Multnomah County, Oregon, for road purposes constituted a charitable contribution within the meaning of section 170. [1]/ FINDINGS OF FACT Petitioners James E. Forkan and Maxine V. Forkan, husband and wife, were legal residents of Portland, Oregon, when they filed their petition. They filed joint Federal income tax returns for 1972 and 1973 with the appropriate office of the Internal Revenue Service. In computing their income tax liabilities, petitioners used the cash method of accounting. In 1962, petitioner Maxine V. Forkan and her sister inherited a 10-acre trailer park in Portland, Oregon. Petitioners later purchased the sister's interest in the trailer park and operated it under the name of Olds Trailer Park. The *247 10-acre tract was zoned A-2 (apartment-residential district) which permits use of the property as a trailer park. Sometime in late 1967 or early 1968, petitioners applied to the Multnomah County Planning Commission (hereinafter the Planning Commission) requesting its approval of a proposed expansion of the trailer park from 83 spaces to 125 spaces. On January 16, 1968, the Planning Commission met to consider petitioners' application and made the following recommendation on the application: Planning Commission Action: Approve expansion of the trailer court according to Zoning Ordinance Standards and as proposed, including carports and storage buildings with modifications to provide for the dedication of the Westerly 25 feet for the widening of N.E. 62nd Avenue and dedication of one-half of a 50-foot radius cul-de-sac near the Northerly terminus of said street and further, a 25-foot yard setback along N.E. 62nd Avenue as required by the Zoning Ordinance Standards. The trailer court plan as modified shall not provide for access from the site to N.E. 62nd Avenue until that street is improved to County Road Standards. This recommendation was the first time petitioners learned *248 that the Planning Commission sought a 25-foot dedication for the widening of N.E. 62nd Avenue (hereinafter the subject property). This action on petitioner's request to the Planning Commission was taken pursuant to Multnomah County Zoning Ordinance 3.9111 which is as follows: 3.9111 The following uses may be permitted after a public hearing before the Planning Commission: (a) Trailer parks; (b) Hotels; (c) Boarding Houses (d) Motels; (e) Professional offices Amended January 10, 1957 (f) Medical and dental offices and clinics The Planning Commission may attach additional conditions as to setbacks, screening, off-street parking and loading, construction standards and maintenance, which may be deemed necessary to protect public health, safety and general welfare; to protect adjacent properties and the public interest. On February 13, 1968, the Board of County Commissioners (hereinafter the Board) met to consider this recommendation of the Planning Commission. At this hearing, petitioners first learned that N.E. 62nd Avenue was only half as wide as planned and that other landowners had previously dedicated the land necessary for the existing avenue. In a letter *249 dated February 13, 1968, the Board advised petitioner James E. Forkan as follows: Be it remembered, that at a meeting of the Board of County Commissioners held February 13, 1968, the following action was taken: Application James E Forkan - 6415 NE Killingsworth Street - MC 4-68, #328 Trailer Court expansion - Planning Commission approves expansion of the trailer court according to Zoning Ordinance Standards and as proposed, including carports and storage buildings, with modifications to provide for the dedication of the Westerly 25-feet for the widening of NE 62nd Avenue and dedication of one-half of a 50-foot radius cul-de-sac near the northerly terminus of said street, and further, a 25-foot yard setback along NE 62nd Avenue as required by Zoning Ordinance Standards. The trailer court plan, as modified, shall not provide for access from the site to NE 62nd Avenue until that street is improved to County Road standards ORDERED, unanimously, that the recommendation of the Multnomah County Planning Commission, modified to require a 20-foot yard setback along NE 62nd Avenue, be adopted as the order of the Board. Further negotiations ensued between petitioners and the Planning *250 Commission concerning the extent of the setback required by the Planning Commission and the Board. One reason for the negotiations was that the Planning Commission was requesting a 25-foot setback which included 15 feet of land already occupied to the south by an existing Pacific Power and Light Substation. The substation adjoins the subject property on N.E. 62nd Avenue. Petitioners objected to 15 feet of the setback because the substation prevents the street from being widened more than 15 feet. Finally, on June 16, 1970, the Board agreed on a 10-foot setback and advised petitioner James E. Forkan by letter that his request for trailer court expansion had been conditionally approved as follows: Be it remembered that at a meeting of the Board of County Commissioners held June 16, 1970, the following action was taken: Letter, Planning Director, in the matter of MC 4-68, Application of James E Forkan, 6415 NE Killingsworth St for Trailer Court Expansion, advising that applicant has presented an alternate proposal for the improvement of this site, and that with appropriate modifications of this proposal, the Board Order of February 13, 1968, should be revised so as to authorize *251 approval of the expansion with conditions, as follows: (1) Provide for the dedication of the Westerly 25 feet for the widening of NE 62nd Avenue and dedication of onehalf of a 50-foot radius cul de sac near the northerly terminus of said street; (2) Provide a ten foot landscaped setback from the west property line to the required sight-obscuring fence; (3) If access is provided to NE 62nd Avenue, the east half (protion to be deducted) shall be improved to a suitable minimum standard as approved by the Director of the Department of Public Works; (4) The applicant shall provide a commitment to share in the cost of the improvement of NE 62nd Avenue when the same is petitioned for construction. ORDERED, unanimously, that said letter be adopted as the order of the Board. As of the date of the trial of the instant case, no petition for the improvements or construction of N.E. 62nd Avenue had been filed, and N.E. 62nd Avenue remained unimproved. Prior to January 16, 1968, when the Planning Commission first considered petitioners' application to expand their trailer park, the property owners on the west side of N.E. 62nd Avenue had already dedicated to Multnomah County (hereinafter *252 the County) the other half of the land needed to complete N.E. 62nd Avenue. The County had not previously requested petitioners to dedicate the subject property. As of January 16, 1968, the County had no immediate plans to construct an improved road on the subject property. On May 12, 1972, petitioners conveyed by deed to the County "a perpetual easement for road purposes" across the subject property and "forever dedicated" it "to the use of the public as a public road." At the time of this conveyance, the subject property had a value of $12,325. The County is a qualified and eligible political subdivision of a State of the United States within the meaning of section 170(c)(1). After making this conveyance, petitioners waited until April 30, 1974, to make the first move toward development of the land adjoining the dedicated property into a trailer park. This move consisted of purchasing pipe for plumbing services to the trailer sites. As of the date of the trial, there were no trailers on the proposed expansion property. On their joint Federal income tax return for 1972, petitioners claimed a charitable contribution deduction in the amount of $10,523.09 attributable to the *253 dedication of the subject property. Because of the limitations on the amount of a charitable contribution deduction imposed by section 170(b)(1)(D), the balance of the amount not claimed in 1972, $1,801.91, was carried over to 1973, and petitioners claimed that amount as a charitable contribution deduction on their joint Federal income tax return for 1973. On examination of petitioners' Federal income tax returns for 1972 and 1973, respondent disallowed the claimed deductions. OPINION Section 170(a) allows a deduction for any "charitable contribution." Under section 170(c), this term includes a gift to a State or political subdivision thereof, provided the gift is made "for exclusively public purposes." The parties have stipulated that Multnomah County, a political subdivision of the State of Oregon, is an organization of the character referred to in section 170(c)(1). The easement rights in issue were dedicated "to the use of the public as a public road," an exclusively public purpose. The only issue, therefore, is whether the conveyance of the easement rights over the subject property was a "charitable contribution" within the meaning of section 170(a). The term "charitable *254 contribution" as used in section 170 is synonymous with the word "gift." As this Court stated in DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962)-- A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor. If a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift. See McLaughlin v. Commissioner,51 T.C. 233, 234 (1968), affd. per order (1st Cir. May 28, 1969). As stated by the Court of Appeals for the Ninth Circuit in Stubbs v. United States,428 F.2d 885, 887 (9th Cir. 1970), cert. denied 400 U.S. 1009 (1971), a transfer does not constitute a gift where it is made "in expectation of the receipt of certain specific direct economic benefits within the power of the recipient to bestow directly or indirectly, which otherwise might not be forthcoming." On consideration of all the evidence in this case, we are convinced that petitioners granted to the County easement rights over the subject *255 property "in expectation of the receipt" of the "specific direct economic benefits," Stubbs v. United States,supra at 887, of obtaining approval of their request for permission to expand their trailer park from 83 spaces to 125 spaces. We are also convinced that the transfer proceeded "from the incentive of anticipated benefit" in the form of permission to make this expansion. DeJong v. Commissioner,supra at 899. We hold, therefore, that petitioners are not entitled to charitable contribution deductions for the transfer of the easement rights to the County. To support their claim, petitioners rely mainly upon Collman v. Commissioner,511 F.2d 1263 (9th Cir. 1975), revg. in part a Memorandum Opinion of this Court, which, in our view, is distinguishable.In that case, Orange County's master plan called for the realignment and widening of Orchard Drive and Oglethorpe Avenue to the respective widths of 80 and 95 feet. As an interim measure, and because traffic did not then justify further widening, the county proposed in negotiations beginning in 1965 and extending into 1967 to widen those streets to 60 and 70 feet, respectively. *256 Finally, on October 24, 1967, Collman agreed to dedicate.79 acres, the land necessary to construct the realigned streets to their ultimate widths, in exchange for the county's promise so to construct both roads and to construct curbs and gutters. Although the dedication was not conditioned on an agreement by the county to rezone the area, the road construction satisfied a county ordinance prohibiting commercial use of the land unless the adjacent roads were of ultimate widths. In March 1969, almost 17 months after the agreement was signed, Collman joined in a petition to have his and other property annexed by the City of Anaheim, and in the summer of 1969, petitioned to have a corner of his property rezoned for use as a service station site. In January 1970, the City approved the zoning reclassification. Based on these facts in the Collman case, this Court found that the effect of the transfer of the.79 acres was to help make Collman's land usable for subdivision or commercial purposes in the future. This Court concluded that this benefit to Collman was sufficient to require denial of a charitable contribution deduction for the transfer. The court of appeals' reversal was *257 based upon a conclusion (contrary to a finding by this Court) that Collman was not "aware" of local ordinances requiring construction of roads to ultimate widths before rezoning could be approved. As the court of appeals viewed the evidence in that case (511 F.2d at 1268), "Collman was a life-long citrus farmer who apparently had no knowledge of the local ordinances when he conveyed the right-of-way." The court of appeals stated (511 F.2d at 1269): Where the chartitable dedication of a roadway is at issue, a seventeen month gap between the date of conveyance and the first move towards land development is too great to support an inference that the transfer was made in expectation of zoning changes for commercial development. Absent evidence that Collman was aware of the local zoning ordinances and that he sought zoning changes in exchange for the roadway or otherwise expected direct economic benefits to result from the conveyance, we are left with the definite and firm conviction that the Tax Court erred in finding that Collman's conveyance of the.79 acre lacked donative or charitable intent.* * * [Fn. refs. omitted.] The facts in the instant case *258 are distinguishable. No inference as to petitioner's knowledge of zoning requirements is required. The first significant stipulated fact is that in 1967 or 1968 petitioners applied to the Planning Commission for approval of the proposed expansion from 83 to 125 spaces, thus demonstrating that they knew that approval of a zoning change was needed for expansion of their trailer park. That request was approved by the Planning Commission and by the Board but on the condition that petitioners dedicate a 25-foot strip for the widening of N.E. 62nd Avenue and one-half of a 50-foot radius cul-de-sac near the north end of the street. Thus, to obtain the direct economic benefit which they sought in the form of needed approval of their trailer park expansion, dedication of the subject property was required. Without making the dedication, such approval would not have been obtained. In exchange for the dedication, the requested approval of the trailer park expansion was given. This case falls within the factual pattern of a series of cases where the dedication of land was related to a desired zoning change or some other economic benefit listed, among others, in the court of appeals Collman *259 opinion (supra at 1269, fn. 2): Stubbs v. United States, supra (dedication of land conditioned on favorable zoning); United States v. Transamerica Corp.,392 F.2d 522 (9th Cir. 1968) (private roadway conveyed on understanding that city would improve and maintain it as a public street to taxpayer's benefit); Pettit v. Commissioner, 61 T.C. 634 (1974) (land dedicated in exchange for subdivision concession from local planning board); Grinslade v. Commissioner, 59 T.C. 566 (1973) (land dedicated in exchange for money, other land for development purposes, and zoning variances); Perlmutter v. Commissioner, 45 T.C. 311 (1965) (dedication in order to obtain approval of subdivision). Petitioners argue that they realized no economic benefit, received nothing of value, and had no economic motivation for dedicating the subject property to public use. They argue that they dedicated a portion of their land to public use only because their neighbors had taken similar action previously. These assertions ignore the economic benefit of a permit to provide 125 rather than 83 spaces in the trailer park. It *260 is irrelevant that petitioners have not made money operating their trailer park or that they might have made more money by building apartments. It is likewise irrelevant that petitioners did not actually expand their trailer court business immediately after obtaining permission to do so. The point is that the Planning Commission and the Board approved petitioners' request for permission to expand their trailer park business and the permission granted by both bodies was on condition that petitioners dedicate the subject property to public use. Petitioners made the dedication and, in return, obtained the coveted permit. That was the quidproquo. See Sutton v. Commissioner, 57 T.C. 239, 244 (1971); Pettit v. Commissioner, supra at 641.No gift was intended or made. Despite petitioners' assertion on brief to the contrary, the fact that the dedication occurred at the same time the requested permission was granted was no coincidence. To ascertain whether petitioners obtained an economic benefit, it is not necessary to wait to see when the trailer park is expanded or whether the expansion will be profitable. Obtaining the expansion *261 permit in and of itself was a benefit. Petitioners argue that neither the Planning Commission nor the Board had legal authority to impose the dedication requirement as a condition to obtaining permission to expand the trailer park. No statutory or case law authority and no legal analysis to support this position is offered. [2]/ It seems reasonable that the Board would have authority to require dedication of additional land for road purposes where the requested trailer park expansion would increase traffic in the area. In any event, petitioners apparently appealed the Planning Commission's order to the Board but did not appeal the Board's decision in an effort to have the resolution of the Board modified to delete this condition. The Board's unappealed decision became the "law of the case." To meet the condition imposed by the Board, petitioners were required to dedicate the subject property and they did so in order to obtain the expansion permit. *262 We conclude that petitioners' dedication of the subject property was not a charitable contribution. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue.
2. /↩ Petitioner James E. Forkan testified that someone at the hearing before the Board stated that "the county had no legal right to take the property as--or to force the dedication of the property." While the testimony was admissible to show the conversations at the hearing, it was not admissible to show the extent of the Board's legal authority to impose this condition on approval of the trailer park expansion.