50 N.J. Super. 74 (1957)
141 A.2d 52
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
HENRY WITTENBERG AND HERMAN WITTENBERG, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 28, 1957.
Decided November 8, 1957.
*75 Mr. Wesley L. Lance argued the cause for plaintiff-respondent.
Mr. George Pellettieri argued the cause for defendants-appellants (Messrs. Pellettieri & Rabstein and Italo M. Tarantola, attorneys; Ruth Rabstein, on the brief).
Before Judges CLAPP, JAYNE and HUGHES.
*76 PER CURIAM.
Defendants were convicted in the Municipal Court of North Hunterdon of violating section IV of an ordinance of the Board of Health of the Township of Clinton. The section provides:
"IV. No garbage, offal or any decaying vegetable substance shall be brought into the Township of Clinton for the purpose of feeding the same to pigs."
An appeal from the conviction was taken to the Hunterdon County Court and, after a hearing de novo before Judge Hall (the county judge having disqualified himself), defendants were again convicted. They appeal to us, charging that this section is unconstitutional and that the State failed to establish the essential elements of the offense beyond a reasonable doubt.
An action for a declaratory judgment had been brought by defendants and another person in 1953 against the township board of health to have the above-cited section declared void and unconstitutional. After a three-day trial, judgment was entered sustaining the ordinance. No appeal was taken from that judgment. The present action was commenced over a year after the entry of judgment. At the trial herein, counsel for the defendants stated to the County Court that he was not waiving any constitutional question and moreover that he would like to have it assumed that he was relying on such arguments relative to the constitutionality of the ordinance as were advanced in the preceding case. Now for the first time counsel for defendants spells out a number of questions going to the constitutionality of the ordinance, also a question as to whether the ordinance invades the statutory jurisdiction of the State Department of Health. None of these questions was apparently stated below in this action, and perhaps none of them, other than two of the constitutional questions, were raised in the prior action. The State seems to assume that the doctrine of res judicata or collateral estoppel precludes consideration of all the constitutional questions, for it observes that the defendants in the instant case were two of the three plaintiffs *77 in the declaratory action, the prosecutor of the present action was the defendant in that action, and the judgment there held section IV of the ordinance constitutional.
However that doctrine raises a number of inquiries here  among them, these: would the State have the burden of establishing which of the present issues were resolved by the preceding action, and furthermore which of the issues so resolved were purely legal in nature (cf. Restatement of Judgments § 70), and which of them raised mixed questions of law and fact? Moreover, under that doctrine, is the civil judgment on the mixed questions of law and fact binding in this action which, defendants claim, is a quasi-criminal action? The last point can be clarified by an illustration. The constitutional questions raised here have to do largely with the matter of discrimination, for example, charging that the ordinance discriminates unreasonably between pig farmers in the township who use the garbage originating in the township (if there are pig farmers who do so) and those who desire to use garbage imported into the township. We were advised on the oral argument that this very question was litigated in the preceding action, and we understood that proofs were then adduced, establishing as a factual matter, that the garbage available within the township was so inconsiderable in amount as not to affect the decision. Can it be said that the declaratory judgment, which perhaps determined that the Wittenbergs were unable to sustain their contention on this factual matter by a preponderance of the evidence, is binding in the present action wherein the State may perhaps have to prove (so defendants claim), beyond a reasonable doubt, that this garbage is so inconsiderable that the ordinance is non-discriminatory? As to the effect of a declaratory judgment in a criminal action, see Reed v. Littleton, 275 N.Y. 150, 9 N.E.2d 814, 817 (Ct. App. 1937); Witschner v. City of Atchison, 154 Kan. 212, 117 P.2d 570, 572 (Sup. Ct. 1941). Another inquiry is whether there has been any increase in the amount of garbage originating within the township since the prior action was commenced and if so, what would be the effect of the prior *78 judgment in the face of such an increase. A further question presented by defendants is whether there is any unlawful discrimination between persons using garbage imported for the purpose of feeding pigs and persons using that imported for the purpose of feeding chickens, or for fertilizer or other purposes; or is no garbage imported for other purposes, or so little garbage that the ordinance can be sustained on the ground that it hits the evil where it is felt most.
This is not the case in which to deal with these various questions. It is elementary law that the ordinance is presumptively constitutional, and will not be declared discriminatory unless, after viewing it in the light of facts established by the proofs or of which we can take judicial notice, it appears to rest upon some manifestly unreasonable classification. Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 79 L.Ed. 1070, 1073 (1935); Reingold v. Harper, 6 N.J. 182, 196 (1951). Here there are no proofs at all having any material bearing on the constitutional questions raised; and under the circumstances there is nothing, of which we can take judicial cognizance, that will serve to rebut the presumption.
Defendants urge furthermore that in prosecuting a violation of this ordinance, the State must make out its case on the basis of proof beyond a reasonable doubt. The County Court so held, and counsel for the State pass the question. However, the ordinance here provides only for a fine; it makes no provision for imprisonment. The courts have held that a proceeding upon such an ordinance is criminal in nature for procedural purposes. City of Absecon v. Vettese, 13 N.J. 581, 584 (1953); City of Newark v. Pulverman, 12 N.J. 105, 113-114 (1953). But is the question whether the law will require proof beyond a reasonable doubt, a procedural question? Or, as a matter of common law, should we now hold that a proceeding upon an ordinance imposing only a fine, is criminal in nature for non-procedural purposes also? Or, again, are we to say that the fact that provision is made under N.J.S.A. 40:49-5 for imprisonment in default of the payment of any fine, renders this a quasi-criminal *79 action? Borough of Ramsey v. Basil, 19 N.J. Misc. 555, 556 (Com. Pl. 1941); Note, "Public Torts," 35 Harv. L. Rev. 462, 463, n. 9 (1922); cf. Note, "Statutory Penalties  A Legal Hybrid," 51 Harv. L. Rev. 1092, 1100 (1938).
This is not the case in which to decide such questions that incidentally are not even suggested by counsel. For we agree with Judge Hall that the proofs here establish beyond any reasonable doubt that the defendants violated the ordinance. They were charged with bringing in, or having brought in, garbage on September 2 and 9, 1956. The factual questions were very thoroughly dealt with by Judge Hall; and therefore with respect to them, we affirm the judgment below for the reasons he stated, as follows:
"The essential elements of the offense under this ordinance as charged are:
1. That the prohibited material was brought into the township from some other municipality.
2. That the material was `garbage, offal or any decaying vegetable substance.'
3. That it was brought into the township for the purpose of feeding it to pigs.
The defendants urge that there is a failure of sufficient proof of some one or more of the elements with respect to both violation dates. This is the entire burden of their position, no other contentions being raised.
First, with respect to the element of importation. As to the September 2 violation charged, the evidence is clear beyond question that the material was picked up by the defendants' truck driven by one of the defendants at various restaurants and hospitals in Newark and environs and driven to defendants' farm in the township.
As to the September 9 incident, the testimony is that the defendants' truck with a load was observed crossing the township line on Route 22 early in the morning and was followed to the farm. In the light of the testimony of the witness LaRochelle that for several consecutive nights commencing the night of September 1-2 and prior to September 9 that the same trip was made each night picking up at the same restaurants and hospitals in and near Newark, there is a clear and reasonable inference that on the morning of September 9 the material in the truck had its origin outside the township. The defendants' argument that it might have been picked up in the township and the truck driven into Readington Township for some unfathomable purpose and brought back into Clinton Township is both an unnatural and unreasonable possibility or inference under the circumstances.
*80 Second, as to whether the material transported was within the prohibited class. Garbage is not defined in the ordinance. So it must be given its ordinary meaning, in the light of the associated words `offal' and `any decaying vegetable substance' and the subject matter and obvious purpose and scope of the ordinance as a whole.
Its meaning here is clearly that first set forth in Webster's New International Dictionary, Second Edition, which is: `offal, as the entrails of an animal or fish, refuse, animal or vegetable matter from a kitchen, market or store.' The term was so defined with respect to both an ordinance and a lease by our old Supreme Court in Stern Holding Co. v. O'Connor, 121 N.J.L. 282 (Sup.Ct. 1938), affirmed 122 N.J.L. 376 (E. & A. 1939).
There cannot be any doubt that what was brought in on September 2 as described by the witness LaRochelle was garbage within the meaning of the ordinance.
Moreover, garbage is a common material well known to almost everyone. It is easily distinguishable as such when seen in a mass. It does not require expert or technical knowledge to properly identify or classify it. So the testimony of the witness Brown that what he saw in defendants' truck with the lid open and in a bucket on the back thereof on September 9 was `garbage' is sufficient.
It is of no legal consequence that the garbage was cooked or treated after it reached defendants' farm before being used. The evident purpose of the ordinance is to forbid the importation of raw garbage. As was said by the former Supreme Court in Earruso v. Board of Health of East Hanover Township, 120 N.J.L. 463, at [page] 466 (1938), `Control of garbage and decaying vegetable and like matter is indispensable to the public health, safety and comfort.'
Third, as to the intent or purpose to feed the imported garbage to pigs. There is no direct evidence as to this element, indeed it is rather rare in any case, unless there be an admission of direct evidence of proof of intent or purpose. It generally must be circumstantial and therefore inferential.
It must be remembered, too, that the proof of violation of the section by its very language does not require evidence that any precise garbage imported was actually fed to the pigs  that is, it does not have to be followed from the Newark restaurants to the pig's mouth. Importation for the purpose of so feeding is sufficient.
The important circumstantial evidence on this point may be listed:
1. The defendants kept a large pig farm at the time and had done so for a considerable period.
2. At least during the period between the offenses they brought in a truck load of garbage every night.
3. It is common knowledge that pigs are frequently raised on garbage. See Earruso v. Board of Health of East Hanover Township, supra. Such regularity is unlikely if garbage is brought in for any other purpose but hog food.
4. The garbage was removed each morning from the truck which brought it in to another truck on the farm in which it was cooked. *81 It is unlikely it would be cooked if it was to be used for any other possible purpose.
5. A truck like the latter one took a load of something to the hog pens regularly, the body was raised, then lowered and the truck pulled out and the pigs were then heard to squeal, a normal pig's reaction to the availability of food.
6. None of the garbage LaRochelle helped bring in during the days covered by his testimony was seen by him to be removed from the farm during the several days involved.
In the face of all this I see no other rational inference but that the garbage was brought in for the purpose of feeding the pigs. The circumstantial evidence to me is inconsistent with any other rational conclusion, save that of the purpose designated in the ordinance. See State v. Rogers, 19 N.J. 218, 233 (1955). The suggestion of absence of sufficient proof of this element flies in the face of common sense and approaches the ridiculous. Courts cannot and do not operate in a vacuum."
Affirmed.