KARL D. PETTIT AND ESTELLE F. PETTIT, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2518–71.   Filed February 7, 1974.

*G. Thomas Reynolds, Jr.*, for the petitioners.
*Howard W. Gordon*, for the respondent.

GOFFE, *Judge:* Respondent determined a deficiency in the petitioner's Federal income tax for the year 1967 in the amount of $7,482.12. The only issue presented for our decision is whether the transfer of 2.75 acres by petitioners to the township of Princeton, N.J., for roadway purposes constituted a deductible charitable contribution under section 170, I.R.C. 1954.[1] The value of the land conveyed is not in dispute.

### FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, supplemental stipulation, and exhibits attached thereto are incorporated herein by this reference.

Karl and Estelle Pettit (herein referred to as petitioners) were legal residents of the township of Princeton, N.J., during the taxable year 1967. They filed their joint Federal income tax return for that year with the district director of internal revenue at Newark, N.J.

During 1967, the petitioners, who were in their seventies, decided to convey certain land to their children as part of their personal estate planning. Since it was their desire to combine two lots into one large lot prior to conveying the lots, the petitioners were required to satisfy the local ordinance relating to subdivisions which was then

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

in effect and had been enacted pursuant to N.J. Rev. Stat. sec. 40:55–1.-1 *et seq.* (1937). The Princeton Township land subdivision ordinance No. 278 required in section 8:4–3 that each lot of a subdivision front on an approved destination street at least 50 feet in width, or such wider circulation street as shown on the master plan or official map or specified elsewhere. Section 8:2–6 of the ordinance provided as follows:

Subdivisions that adjoin or include existing streets that do not conform to widths as shown on the Master Plan or Official Map or the street width requirements of this Ordinance shall dedicate additional width along either one or both sides of said road. If the subdivision is along one side only, one-half of the required extra width shall be dedicated.

A "Report on Master Plan for Road Development" (herein referred to as the report or master plan) of Princeton was prepared by the township's planning board in October 1966 and made public in revised form on January 4, 1967. The master plan proposed that Ridgeview Road, the street upon which petitioners lived, be classified as a "minor collector" road. Ridgeview Road was 16.5 feet wide in front of the petitioners' home and 25 feet wide on a section east of their home. The minimum required right-of-way width for a "minor collector" road was 60 feet. The report, however, stated that—

It is not the intent of the Planning Board or the Township Committee to immediately start a vigorous road building campaign to install the roads as shown on this plan. Where roads traverse a certain parcel of property, it is the intent that these roads will usually be built as that property is developed. The roads as shown on the Road Master Plan are schematic and can be moved slightly to accommodate specific conditions. The roads as shown on the plan have been engineered from contour maps and are situated where intersections and grades will allow the intended type of road.

A sketch plat of the proposed subdivision of the petitioners' property was prepared on April 24, 1967, and submitted to the planning board for classification. The property contained in the subdivision was bounded by Cherry Valley Road on the north, Cherry Hill Road on the east, and by Ridgeview Road on the south. The petitioners owned other property on the southern side of Ridgeview Road which was not included in the subdivision. This property extended east to Cherry Hill Road. The two lots to be combined into lot 28 were located in the northern and eastern portions of the tract and fronted on Cherry Valley Road and Cherry Hill Road, respectively.

The petitioners' home was located on lot 29 and fronted on the northern side of Ridgeview Road.

At a meeting of the planning board on May 8, 1967, the proposed subdivision was presented for classification and, subsequently, classified as a minor subdivision. Approval of the subdivision was conditioned upon the satisfaction of certain requirements, one of which

was the filing of a metes and bounds deed with the township clerk for 25-foot wide dedication strips along Cherry Valley Road, Cherry Hill Road, and Ridgeview Road, as reflected in the minutes of the board and correspondence received by the petitioners.

On July 26, 1967, the petitioners conveyed interests in lot 28, as shown on the proposed subdivision's sketch plat, to various related parties as gifts. The 19.752 acres were valued at $98,760 for the purpose of gift tax returns which were filed for the year 1967.

The planning board initially required the petitioners to dedicate a strip of land along the northern side of Ridgeview Road in order to obtain subdivision approval. Petitioner Karl Pettit contacted the chairman of the planning board, Hantz Sanders, and arranged for him to view the site of the required dedication. Pettit pointed out to him the inadvisability of meeting the dedication requirements on the northern side of the road because of the rough terrain present there and the greater expense to the township of such construction. He was also concerned that the stone gates, shrubbery, and the old butter-churning house—which were within 10 feet of the road in front of his house—would be destroyed if Ridgeview Road was widened in a northerly direction. Pettit offered to provide Sanders with the required dedication from the property owned by the petitioners on the southern side of the road which had level terrain.

The minutes of the September 11, 1967, meeting of the planning board stated that the Pettit subdivision plan was not acceptable for final board approval because the petitioners had indicated to one of the board members that they wanted the requirement of the dedication of a right-of-way along Ridgeview Road eliminated as a condition for the subdivision's approval. By a letter dated November 16, 1967, the petitioners offered the planning board a strip of land running on the south of Ridgeview in lieu of the required dedication from the northern side of the road. The letter stated:

We request that you review the approval of this subdivision and that the land for the widening of Ridgeview Road be accepted from the property which we own on the south side of Ridgeview Road in substitution for property on the north side of the road.

The facts which lead to this request are:

1. To align Ridgeview Road with the extension of the present Arreton Road (which we understand is to be renamed Ridgeview Road) on the Frederick G. Sigler, III tract to the east of Cherry Hill Road.

2. To make any road widening less costly—the topography on the north side of Ridgeview Road would require a considerable amount of fill and shoulder preparation.

3. To avoid any destruction of the gate pillars and shrubbery and damage to trees and the well houses all located within or close to the north side of Ridgeview Road.

We understand that any subdivision of the land owned by Mrs. Pettit on the south side of Ridgeview Road may require dedication of a second strip of land for road widening purposes since all Ridgeview Road properties as a condition to subdivision approval are presently being required to deed sufficient land to the Township for a road of 50 feet.

We would suggest, therefore, that the Township at this time, instead, accept dedication of a strip of land 17 feet in width along the entire length of the property on the south side of Ridgeview Road with a notation in the Planning Board minutes that no further dedication of land from our property will be required for widening of Ridgeview Road as a condition of approval of subdivision of the land remaining. If this would assist the Township we would be pleased to cooperate.

We hope to be able to give the 20 Acre Cherry Valley—Cherry Hill Road property to our children during 1967 and appreciate your consideration of our request to make this possible.

The planning board acceded to the request of the petitioners in action taken at a meeting held November 21, 1967, "with the understanding that any future subdivision of [petitioners' remaining] land will require additional land for road widening purposes on the south side in accordance with the requirements of the Road Master Plan." Petitioners were informed of this action by letter dated December 1, 1967, wherein it was noted that the original condition of dedicating 25-foot right-of-way strips along Cherry Valley Road and Cherry Hill Road, in order to obtain approval of the subdivision, was still in effect.

On December 18, 1967, the Pettits deeded four tracts of land to the township of Princeton for public roadway purposes. In making the conveyance, the petitioners did not take into any account the possibility that the requirement in the ordinance pertaining to increased right-of-way dedication for existing streets as a condition of subdivision approval was unconstitutional. The tracts included a 25-foot strip of land along Cherry Hill Road comprising 0.488 acres, a 25-foot strip of land along Cherry Valley Road comprising 0.702 acres, a 16.5-foot strip of land (the existing Ridgeview Road) comprising 0.508 acres, and a 33.5-foot strip of land (the southerly portion of Ridgeview Road) comprising 1.652 acres and fronting on the petitioners' remaining property, which was bounded on the east by Cherry Hill Road. The deed was received in the administrative office of Princeton Township on December 20, 1967, and recorded in the Mercer County Clerk's Office on April 2, 1968.

On February 12, 1968, the planning board approved for signature the petitioners' minor subdivision and notified them of this fact in a letter dated February 14, 1968.

In their Federal income tax return for 1967, the petitioners deducted from their income as a charitable contribution $13,750 for the value of 2.7 acres of land dedicated to Princeton Township for public roadway purposes, computed on the basis of $5,000 an acre. Petitioners

did not claim a deduction for the acreáge upon which Ridgeview Road lay. A deduction was claimed, however, for acreage comprising a portion of the then-existing Cherry Valley and Cherry Hill roads. In his notice of deficiency the respondent disallowed the claimed charitable deduction with the explanation that "it has not been established that this transaction constituted a voluntary gift which lacked consideration."

## OPINION

Section 170(a) allows a charitable deduction with certain limitations for a contribution or gift to or for the use of a State, a possession of the United States, or any political subdivision of any of the foregoing but only if the contribution or gift is made for exclusively public purposes, as provided in section 170(c)(1). The crux of the difference between the positions of the parties is whether or not the land was dedicated to the Princeton Township with the requisite donative intent necessary to constitute a charitable gift. The parties agree that the township of Princeton is an organization of the character referred to in section 170(c) and that the dedicated land was used for public purposes.

The basis of the petitioners' reconstruction of the facts surrounding the dedication of the land herein involved is that they acted in response to the promulgation of the master plan in January 1967 rather than the approval of their subdivision plan. At the trial, petitioner Karl Pettit explained that the master plan required widening on both sides of Ridgeview Road, which he said would have been both "silly" and "stupid" because of the rough terrain present on the northern side of the road and would have necessitated increased road construction outlays by the petitioners. He testified that he invited the chairman of the planning board out to his home to inspect Ridgeview Road, and the chairman was amenable to his suggestion that the rights-of-way be extracted from the Pettit land south of the road in lieu of that from the land north of the road. Pettit stated that he offered him both the requisite land on the south side to satisfy the master plan and also the tracts along Cherry Valley Road and Cherry Hill Road "because at some time they would have to have it." Pettit claims that the preparation of the proposed subdivision sketch plat on April 24, 1967, was totally unrelated to the promised dedication of the increased rights-of-way.

We are again called upon to determine a taxpayer's incentive, motive, or purpose in making a gift of land to a municipality. In doing so, our examination is not limited to the narrow probing of the subjective attitude of the donor and the degree of charitable benevolence which may have prompted the transfer. We must look at the true nature of the transaction, *Charles O. Grinslade*, 59 T.C. 566 (1973);

*Larry G. Sutton*, 57 T.C. 239, 243 (1971), and make an objective inquiry as to whether what is called a gift actually amounts to that in reality. In other words, we must decide what was in fact petitioners' basic or dominant reason for making the transfer of the land to the Princeton Township. *Commissioner* v. *Duberstein*, 363 U.S. 278, 286 (1960).

A "gift" has been generally defined as a voluntary transfer of property by the owner to another without consideration therefor. Where the transfer is impelled by some anticipated benefit to the donor beyond the mere satisfaction which flows from the performance of a generous act, it cannot be considered a gift. *Harold DeJong*, 36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (C.A. 9, 1962). A real gift is the expression of a "detached and disinterested generosity." *Commissioner* v. *LoBue*, 351 U.S. 243, 246 (1956). It is motivated by "affection, respect, admiration, charity or like impulses," *Robertson* v. *United States*, 343 U.S. 711, 714 (1952), and not compelled by the "constraining force of any moral or legal duty." *Bogardus* v. *Commissioner*, 302 U.S. 34, 41 (1937).

There are several reasons why we reject the petitioners' assertion that the dedication of the rights-of-way and the approval of the subdivision were completely unrelated to each other. First, the "Report on the Master Plan for Road Development" made it quite clear that it was "not the intent of the Planning Board or the Township Committee to immediately start a vigorous road building campaign to install the roads as shown on this [master] plan," but that the master plan would be ultimately realized through the application of an amended land subdivision ordinance at the time of the development of particular parcels of land, which would affect the roads traversing or adjoining such property. We fail to perceive how the promulgation of the master plan alone could have produced such agitation in Karl Pettit that he would have gone to such lengths to change the proposed scheme for Ridgeview Road.[2] Nor can we find any reference in the report itself which requires widening on both sides of existing roads in Princeton Township apart from a consideration of the subdivision ordinance.

Although Karl Pettit brought the chairman of the planning board out to view Ridgeview Road and there offered him land from the southern portion of the road in lieu of land from the northern portion of Ridgeview, we think the offer was made in the context of obtaining subdivision approval. Besides the fact that the master plan contained no reference to a requirement that the rights-of-way be exacted from

---

[2] Indeed, if the master plan alone had brought to bear such a constraining force of a moral or legal duty upon the prospective dedication of the roadways, as perceived by Pettit, we would be compelled to disallow the charitable deduction for want of donative intent. *Bogardus* v. *Commissioner*, 302 U.S. 34, 41 (1937).

both sides of Ridgeview Road, Mr. Pettit was somewhat vague about the date of the chairman's visit and was not entirely certain that the visit was made prior to the receipt by the petitioners of a letter from the planning board dated June 22, 1967, in which no reference was made to a substitution of tracts. The petitioners did not call the chairman to testify at the trial. The minutes of the planning board meeting on September 11, 1967, state that the petitioners had indicated to a member of the planning board their desire to have the condition of a deed for the rights-of-way along Ridgeview Road eliminated. In a letter dated as late in the year as November 16, 1967, the petitioners requested the planning board for the first time to substitute property from the southern side in reviewing the subdivision approval of the Pettit property. The land was not conveyed and dedicated to the Princeton Township until December 18, 1967, almost 8 months after the proposed subdivision sketch plat had been prepared and presented to the planning board, which is sufficient in itself to demonstrate the connection between the dedication and the subdivision approval.

We have had the occasion in the past to review the deductibility of property dedicated to political subdivisions of States pursuant to zoning and subdivision ordinances. In *Jordon Perlmutter*, 45 T.C. 311 (1965), the taxpayer conveyed to the county 8 percent of the gross area of his subdivision for use by schools and for recreational facilities pursuant to subdivision regulations of the county's planning and zoning board and in order to obtain approval of his subdivision. We there denied the charitable deduction because the transfer was made under the compulsion of a legal requirement and because the taxpayer's remaining land was enhanced in value by reason of the schools and recreational facilities. In *Larry G. Sutton, supra*, the taxpayer conveyed a street easement to the city in order to obtain a building permit. The city ordinance required that a permit could not be obtained unless abutting streets conformed with specified requirements in the city's master plan pertaining to width. We held in that case that, even though the taxpayer was not compelled to make the transfer, the deduction was not allowable because the transfer was made with the expectation of the receipt of direct economic benefits in the form of additional utility and value to be derived from the commercial development of the land.

In the instant case we have found that the land was dedicated pursuant to the land subdivision requirements of the township. In order to obtain approval of their subdivision, the petitioners were required to grant the rights-of-way to the Princeton Township and would not have done so absent the dictate of the land subdivision ordinance. Such a conveyance under the compulsion of a legal requirement obviates any "detached and disinterested generosity" on the part of petitioners

and the requisite donative intent for a charitable gift. Even if the petitioners had prevailed in their efforts to secure approval of their subdivision without dedicating the rights-of-way, which was highly unlikely, they avoided considerable difficulty by making the transfers. *Jordon Perlmutter, supra* at 316. The approval of the subdivision itself constituted a benefit conferred upon the petitioners or a quid pro quo for the dedication of the required land, even though the purpose behind obtaining subdivision approval was the transfer of property for estate-planning purposes without any ostensible direct economic benefit to the petitioners besides a savings of estate taxes. It is not necessary for our holding that the benefit derived from the transfer be an economic benefit. It is enough that the donor has received some benefit beyond the satisfaction which flows from the performance of a generous act. *Harold DeJong, supra* at 899.

The parties have stipulated that the constitutionality of requiring dedications of land in order to obtain subdivision approval has been considered by New Jersey courts subsequent to the taxable year involved. See *Longridge Builders, Inc.* v. *Planning Bd. of Princeton Tp.*, 52 N.J. 348, 245 A.2d 336 (1968) ; *Brazer* v. *Borough of Mountainside*, 55 N.J. 456, 262 A.2d 857 (1970) ; *Princeton Res. Lands* v. *Princeton Tp. Plan. Bd.*, 112 N.J. Super. 467, 271 A.2d 719 (1970). The Supreme Court of New Jersey in *Longridge Builders Inc.*, and in *Brazer*, decided that subdividers could be compelled to construct new streets outside their subdivisions only where such streets were necessary to serve the subdivided lots and to pay for only that portion of the cost which bore a rational nexus to the needs created by, and benefits conferred upon, the subdivision. In declaring section 20–41 [3] of the Princeton Township Code invalid, the Superior Court of New Jersey in *Princeton Res. Lands, Inc.*, held that the ordinance could not require a subdivider to donate land to increase the right-of-way of an existing, abutting street which already serves the municipality.

Petitioners contend that the subsequent declaration by a New Jersey court that the Princeton Township's ordinance is unconstitutional in its attachment of certain conditions to obtaining subdivision approval, together with the petitioners' failure to bring an action to regain the property conveyed, renders the transfer of the land deductible. They assert that if this Court does not allow the deduction, they would be required to go through the "absurd exercise" of filing a court action to regain the property and then simply reconvey the land to the municipality in order to obtain the deduction.

The taxpayers in *Jordon Perlmutter, supra* at 316, argued that, because of advice rendered by their attorney that the county regulation

---

[3] Sec. 20–41 is identical to sec. 8 :2 of ordinance No. 278.

requiring land dedication was unconstitutional, the transfers made by them were voluntary acts of generosity induced without regard to any requirements of law. We held there that, even though the legal requirement of dedication may have been "colorable," the taxpayers acted under the "ostensible compulsion of compliance" with the applicable regulation regardless of their belief as to its constitutionality. We noted that it was significant that the petitioners there elected not to contest the issue of constitutionality.

Whether or not the petitioners in this case learned of the constitutional doubtfulness of the ordinance before or after the conveyance of the land to the Princeton Township is not significant since they acted under the compulsion of complying with not less than a colorable legal requirement. *Jordon Perlmutter, supra* at 317. It is axiomatic that such ordinances are presumed to be constitutional. *Euclid* v. *Ambler Co.,* 272 U.S. 365 (1926) ; *State* v. *Wittenberg,* 50 N.J. Super. 74, 141 A.2d 52 (1957), affd. 26 N.J. 576, 141 A.2d 57 (1958). The subsequent declaration of invalidity of the ordinance in question by the New Jersey appellate court in 1970 and related pronouncements by the New Jersey Supreme Court after the date of the conveyance in no way affected the prevailing intention or state of mind of the petitioners on the date of the conveyance, December 18, 1967, when they were concerned with obtaining subdivision approval after having conveyed interests in the proposed lot 28 on the sketch plat to related parties some 5 months previously.

While we may have possibly given the impression in *Jordon Perlmutter* that the invalidation of an ordinance of this nature by a State court subsequent to the date of conveyance, but prior to the date of the trial, would be a factor in the taxpayer's favor on this issue, we conclude here that such a subsequent declaration has no effect on the dominant reason for the petitioners' conduct at the time of the conveyance, which in this case was the satisfaction of the planning board's condition for subdivision approval. *Commissioner* v. *Duberstein, supra* at 286.

We are not persuaded by the petitioners' argument that our denial of the claimed deduction would only prompt them to go through the "absurd exercise" of regaining the dedicated property from the Princeton Township when it is not at all certain whether the New Jersey courts would compel such a reconveyance. Nor are we convinced that their failure to attempt to regain the property signifies their primary charitable intention, as they urge. There is absolutely no indication that the New Jersey appellate decision has retroactive effect. Furthermore, if we were to accept the petitioners' argument, we would ignore the basic premise of annual tax accounting which views the tax impact

of a transaction within the framework of a particular taxable year. *Commissioner* v. *Gordon*, 391 U.S. 83, 96 (1968).

Petitioners actually dedicated more land along the southern portion of Ridgeview Road, some 16.5 feet, than was required to obtain subdivision approval. The planning board required (in lieu of the right-of-way on the northern side of Ridgeview Road adjoining the subdivision) only 17 feet running along the entire length of the Pettit property on the southern side of Ridgeview Road. However sympathetic we may be to the petitioners' plight in this regard, we are unable to sustain a charitable deduction to the extent of the 16.5 excess feet dedicated along Ridgeview Road. In view of the petitioners' November 16, 1967, letter to the board, which reflected an attempt to restrain the board from requiring a further dedication beyond 17 feet from the Pettit property on the southern side of Ridgeview Road as a condition for the approval of a later subdivision of that property, the negative response of the board to such a stipulation, and other facts contained in the record, we are constrained to find that the petitioners conveyed the additional land with the expectation that they would receive approval for a future subdivision of the remaining Pettit property and in consideration for the assurance that Ridgeview Road would only be widened from the southern side so that the stone gates, butter-churning house, and the shrubbery in front of the house would not be damaged. We are not convinced by the fact that the approval of a subsequent subdivision of the remaining property would not require a right-of-way dedication as a result of the invalidation of the ordinance. It is sufficient that the petitioners exhibited an expectation that they would receive the benefit of subdivision approval as a result of the dedication. See *Stubbs* v. *United States*, 428 F.2d 885, 887 (C.A. 9, 1970).

Of the 16.5 excess footage conveyed, it appears to us that the petitioners conveyed 7.5 feet in width along the stretch of Ridgeview Road between the end of the Pettit property on the northern side of the road and its intersection with Cherry Hill Road, which was in excess of the required dedication for the approval of a future subdivision of the remaining Pettit property. In our opinion this excess footage was conveyed with the same expectation of subdivision approval of remaining lands and in consideration of the same assurances that constituted the quid pro quo for the conveyance of the entire 16.5 feet in excess of that demanded by the planning board.

In light of all the facts and the totality of the transactions, we hold that the petitioners' conveyance of the land in question does not qualify as a charitable contribution under section 170.

*Decision will be entered for the respondent.*