WILLIAM A. SABA and TERESA Z. SABA, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Saba v. Commissioner
Docket Nos. 7592-78, 8036-78, 8037-78, 8038-78, 8039-78.
United States Tax Court
T.C. Memo 1980-199; 1980 Tax Ct. Memo LEXIS 387; 40 T.C.M. (CCH) 446; T.C.M. (RIA) 80199; June 11, 1980, Filed James O. Fergeson, Jr., for the petitioners. Lewis J. Hubbard, Jr., for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined the following deficiencies in petitioners' income taxes for calendar years 1974 and 1975: Deficiency For
Deficiency For
Petitioners'
Tax Year Ending
Tax Year Ending
Names
December 31, 1974
December 31, 1975
William A. Saba
$ 6,738.00
William A. and
Teresa Z. Saba
$ 6,977.00
Richard S. and
Barbara Sparrow
18,060.50
4,439.50
John M. Saba, Sr.
and Gwendoline A.
Saba
5,946.00
5,048.00
Robert J. and
Rosalind A. Carr
14,838.00
8,348.00
*388 The issue for decision is whether during 1974 petitioners made a charitable contribution within the meaning of section 170(a), I.R.C. 1954, [2] and if so, the fair market value of the property contributed. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. William A. Saba filed his Federal income tax return for calendar year 1974 with the Internal Revenue Service Center, Chamblee, Georgia. Prior to December 31, 1975, William A. Saba married Teresa Z. Saba, and they filed a joint Federal income tax return for calendar year 1975 with the Internal Revenue Service Center, Chamblee, Georgia. At the time of filing their petition in this case, William A. Saba and Teresa Z. Saba resided as husband and wife in Sarasota, Florida. Robert J. Carr and Rosalind A. Carr, husband and wife, who resided in Sarasota, Florida, at the time of filing their petition in this case, filed joint Federal income tax returns for calendar years 1974 and 1975 with the Internal Revenue Service Center, *389 Chamblee, Georgia. John M. Saba, Sr., and Gwendoline A. Saba, husband and wife, who resided in Sarasota, Florida, at the time of filing their petition in this case, filed joint Federal income tax returns for calendar years 1974 and 1975 with the Internal Revenue Service Center, Chamblee, Georgia. Richard S. Sparrow and Barbara Sparrow, husband and wife, who resided in Sarasota, Florida, at the time of filing their petition in this case, filed joint Federal income tax returns for calendar years 1974 and 1975 with the Internal Revenue Service Center, Chamblee, Georgia. On January 29, 1971, Richard S. Sparrow, Robert J. Carr, William A. Saba, and two persons not petitioners herein, leased certain parcels of land located in the Longbeach Subdivision of Longboat Key, Florida, from Frank J. Conrad and Marjorie L. Conrad. Amongst those properties leased were lots 1 through 14, inclusive, of Block 39 of the Longbeach Subdivision in addition to all accretions to the leased properties. [3] The lease of the properties was for a term of 23 years commencing on January 29, 1971, with a purchase option exercisable by the lessees at any time during the duration of the lease. Pursuant to *390 the terms and conditions of the purchase option as detailed in paragraph 14 of the January 29, 1971, lease -- (a) The purchase price shall be FOUR HUNDRED FIFTY THOUSAND ($450,000.00) DOLLARS. (b) The Landlord shall *391 convey a good and marketable title by warranty deed to Parcel #1 of the demised land. Landlord shall further convey all of its right, title and interest in and to Parcel #2 of the said land. During or before 1971, the above-named lessees, in addition to William A. Saba acting on behalf of John M. Saba, Sr., formed a partnership with the name of Longbeach Associates No. 1. Prior to leasing the Longbeach Subdivision properties, the partners hired a land use planner to prepare a plan for optimal utilization of the properties. As completed on January 15, 1971, the land use plan suggested, inter alia, that the northern portion of the peninsula, located at the northern tip of Block 39 and known as Beer Can Island, [4] be donated to a governmental agency or a charitable organization and restricted to use as a wildlife sanctuary. *392 On approximately June 17, 1971, Messrs. Sparrow, Carr, and William Saba appeared before the Board of County Commissioners of the town of Longboat Key, Florida. They represented that they were acting on behalf of the owners of Beer Can Island to offer to donate the northern portion of that peninsula to Longboat Key if the town would consent to use the land as a wildlife sanctuary. After considering the proposal the Board of County Commissioners declined to accept the donation. On July 12, 1971, Frank J. Conrad and Marjorie L. Conrad filed with the appropriate Florida authority, the State of Florida Board of Trustees of the Internal Improvement Trust Fund (Board), a petition for disclaimer requesting the State to repudiate any possible interest that it might have in the entire peninsula of Beer Can Island. At that time, Mr. Conrad presented documentary evidence, including government surveys dating as early as 1880, maps, charts and aerial photographs with dates beginning in the 1870's and continuing to the 1970's, geodetic surveys, and registered studies of Longboat Pass made by the U.S. Army Corps of Engineers, in an effort to show that Beer Can Island gradually accreted to *393 the northern end of Block 39 of Longboat Key, thereby extending Mr. Conrad's property in a northerly direction. The staff to the Board reviewed the evidence presented by Mr. Conrad, independently researched the matter, and was unable to discover substantial documentary evidence to contradict Mr. Conrad's position. As a result, the staff suggested to the Board that the State effectively renounce any claim that it might have in Beer Can Island by granting the disclaimer application. The matter was placed on the December 14, 1971, agenda for Board decision. During the December 14, 1971, Board meeting the Florida Attorney General requested that action on the application for disclaimer be deferred pending a determination of whether either Manatee County, Florida, or the town of Longboat Key would have interest in the subject property. Subsequently, each of those government subdivisions indicated their interest in Beer Can Island as a public park and recreational area. Yet neither the town of Longboat Key nor Manatee County presented documentary evidence to contradict Mr. Conrad's claim to Beer Can Island. On February 22, 1972, the Chairman of the Board of County Commissioners for *394 Manatee County in writing indicated to the Executive Director of the Board that the County would like the State to dedicate Beer Can Island for use as a "bird and/or animal sanctuary or for public park and recreational purposes." On March 2, 1972, the Manatee County Board Chairman wrote a letter to the Board intended as a substitute for the February 22 communication requesting that instead the Board quitclaim deed Beer Can Island to the County. Both communications indicated that the town of Longboat Key would approve of such actions; thereafter a meeting with town officials confirmed that position. On March 7, 1972, Frank J. Conrad and Marjorie L. Conrad filed suit in the Circuit Court, Manatee County, Florida, against the authorities of the State of Florida to quiet title to Beer Can Island and to perpetually enjoin defendants from deeding the subject property to any party other than plaintiffs. The plaintiffs therein based the lawsuit on the common law theory that title to accreted property is in the owner of the upland property to which the accretion has attached. At a formal meeting of the Board of April 4, 1972, the Board members addressed the issue of the position to *395 be taken by Florida with regard to the State's interest, if any, in Beer Can Island. The Executive Director of the Board stated that the staff had modified its earlier recommendation to account for the substantial public interest in Beer Can Island. As a result, at this time the staff recommended denial of the Conrads' application for disclaimer and affirmative action on the Manatee County request for conveyance by quitclaim deed. The Conrads' attorneys represented the opposing view that the State had no interest in Beer Can Island and that a State conveyance by quitclaim deed to the County, rather than granting a disclaimer in favor of the plaintiffs, would be in error. At the conclusion of the meeting, the Board adopted without objection its staff's recommendation as modified. While the Board neither claimed nor denied a State interest in the property, it based this decision on two factors: (1) substantial local interest in retaining Beer Can Island as a public recreational area and (2) the willingness of Manatee County to pursue the matter in court. On April 6, 1972, Manatee County filed a motion for leave to intervene in the suit for injunction and to quiet title. The intervention *396 request was based upon the Board's April 4, 1972, authorization for the State to issue to Manatee County a quitclaim deed covering Beer Can Island. On approximately April 15, 1972, the Conrads filed an amended complaint to their suit for injunction and to quiet title to Beer Can Island. Referring to the April 4, 1972, Board authorization, the amended complaint specifically sought to enjoin the State from transferring to Manatee County by quitclaim deed any interest in the subject property. The plaintiffs alleged that Beer Can Island was a gradual and natural accretion to their upland property. The Conrads asserted that as the upland owners, under chapter 253.129 of the Florida Statutes, they were entitled to a disclaimer by the State of any interest it might claim in this naturally accreted land. In their answers to plaintiffs' amended complaint both the State of Florida and Manatee County denied plaintiffs' allegations, and Manatee County counterclaimed that title to Beer Can Island was vested in the Board as trustees for the State of Florida.
On August 28, 1973, the Conrads filed a second amended complaint praying for a determination as to whether the Board's authorization *397 to quitclaim deed the peninsula including Beer Can Island was a legal action since previously the Florida Circuit Court judge had issued a temporary restraining order prohibiting the State from conveying their interest, if any, therein. Plaintiffs further asked: 4. That all claims, rights, titles, interests or equities of the Defendant Board of Trustees and all persons claiming by, through or under them or any of them, since the filing of the Lis Pendens in this suit be forever cancelled and decreed to be null and void and held for naught. On September 28, 1973, the Conrads conveyed to the Longbeach Land Trust by deed in trust their interests and rights in those Longbeach Subdivision properties subject to the January 29, 1971, lease. The Longbeach Land Trust had been established by the Longbeach Associates No. 1 partnership. On January 22, 1974, the Sarasota Bank and Trust Company (Bank), as trustee of Longbeach Land Trust, moved to be substituted as party plaintiff in the suit for injunction and to quiet title. On the same date all parties to the action agreed and stipulated to the substitution of the party plaintiff. The Bank then filed a third amended complaint asserting *398 fee simple ownership in the peninsula including Beer Can Island. In the stipulation to substitute party plaintiff all parties to the suit also consented to the filing of the third amended complaint. Prior to December 4, 1973, the parties to the suit for injunction and to quiet title to the entire peninsula of Beer Can Island negotiated a proposed settlement. The parties agreed that the Board, as trustees for the State of Florida, would quitclaim deed to the Conrads or their successors in interest the entire 19.7 acres of the peninsula of Beer Can Island. The Conrads or their successors would retain 7.6 acres in the southerly portion of the land formation. A common boundary would be demarcated at the northern tip of the 7.6 acres beyond which neither plaintiffs nor their successors could thereafter claim interest in the land or its accretions. Plaintiffs or their successors would then deed in fee simple to the Board, as trustees, the adjacent northerly 12.1 acres of Beer Can Island, together with an access easement through the southerly 7.6 acres. However, the conveyance of the northern sector of Beer Can Island would be subject to a covenant running with that land which would *399 restrict (1) the property's use to that of a recreational area to be henceforth maintained in its natural state without permanent improvements, and (2) north peninsula access to modes other than motorized wheeled vehicles. Upon dissolution of the injunction prohibiting the Board from conveying their interest to parties other than plaintiffs, the Board planned to convey in fee simple the 12.1 acres of Beer Can Island, subject to its restrictions, to Manatee County. On December 4, 1973, the Board considered and unanimously approved the proposed settlement. In January 1974 the parties to the suit for injunction and to quiet title submitted a stipulation for settlement to the Circuit Court of Manatee County, Florida. The stipulation for settlement included the provisions of the settlement proposed to the Board on December 4, 1973, which in pertinent part state: 6. Thereafter the property described in attached Schedule "1" shall be conveyed by the Trustees of the Internal Improvement Trust Fund of the State of Florida to the Plaintiff, Sarasota Bank and Trust Company, as "Trustee, as per deed substantially in the form attached as Exhibit "F"; property described in attached Schedule *400 "A" and access easement there to shall be conveyed by Bank to defendants Trustees as per deed substantially in the form attached as Exhibit "G"; and upon exchange of the foregoing deeds, the said Trustees of the Internal Improvement Trust Fund of the State of Florida shall forthwith convey the property described in attached Schedule "A" and access easement thereto to Manatee County, a political subdivision of the State of Florida, subject to conditions set forth in paragraph Exhibit "H"; and Manatee County shall quit claim the property described in attached Schedule "C" to Plaintiff as per deed substantially in the form attached as Exhibit "1". 7. The parties hereby establish a common boundary line, described in attached Schedule "B", and any extension of said line, whether westerly or easterly, or both, shall now and in the future mark the upland boundary between the parties, their successors and assigns, as to the accretion herein described and any accretion to Plaintiff's uplands hereafter formed, even though some part of the described property may at times be washed away by erosion and be later added to or rebuilt by accretion. It is the intention of the parties that Bank and *401 its successors in interest shall own all accretion to Longboat Key attaching to property owned by them lying southerly of said common boundary line and that grantee of land described in Schedule "A" shall own all accretion lying northerly of said common boundary line, whether actually attached to Longboat Key or not. Any erosion of the described tract owned by Plaintiff southerly of the common boundary line and below the mean high tide line will vest ownership of such eroded land in the State of Florida. Any accretion to the described tract owned by Plaintiff which occurs southerly of the common boundary line and above the mean high tide line will vest ownership of such accreted land in the Plaintiff and its successors in interest. 8. It is further stipulated that Plaintiff shall grant an access easement for ingress and egress to and from the property described in Schedule "A", running from a public street in the Town of Longboat Key, thence through Plaintiffs privately owned uplands, to the land described in Schedule "A".Said easement shall be used for ingress and egress only, and shall be limited to pedestrian usage and non-motor vehicles only, such as, but not limited to bicycles, *402 provided that governmental vehicles may use said easement for purposes of public health, safety, and welfare. 9. It is further stipulated that property described in Schedule "A" shall be kept in its natural state in perpetuity, and preserved as a natural wilderness recreational area and wildlife preserve and that no man-made alterations shall be caused or structures of any kind constructed or placed on said property other than in connection with protection of the property from natural elements, and then only with applicable local, state and federal permits. On January 22, 1974, the judge for the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida, entered final judgment accepting the parties' stipulation for settlement and ordered dissolution of the injunction prohibiting the Board from conveying its claims to the peninsula of Beer Can Island. Accordingly, by quitclaim deed on March 1, 1974, on behalf of the State of Florida the Board transferred the entire 19.7 acres of land in Longbeach Subdivision to the Bank, as trustee for the Longbeach Land Trust. On March 6, 1974, the Bank conveyed in fee simple to the Board the 12.1 acres of Beer Can Island. *403 The conveyance from the Bank to the Board included an easement for ingress and egress to and from the northern 12.1 acres of Beer Can Island over the southerly 7.6 acres retained by the Bank, its successors and assigns. Moreover, the fee simple deed to the State contained the following restriction as a covenant running with the land: 1. The said property shall be used and maintained at all times henceforth solely as a public recreation area in its natural state; no permanent structure or improvements shall be erected thereon, and all use thereon of motor-driven wheeled vehicles shall be prohibited except for emergency, police, maintenance or service vehicles which shall be permitted thereon while in performance of official duties directly related to public health, safety or welfare. In their income tax returns petitioners treated the 1974 conveyance of Beer Can Island as a charitable contribution to the State of Florida made by their partnership, Longbeach Associates No. 1. Accordingly, each petitioner claimed his proportionate share as a charitable deduction in his 1974 Federal income tax return, as follows: Claimed Charitable
Deduction In 1974
For Beer Can Island
Name of Petitioners
Conveyance
William A. Saba
$16,015
Robert J. Carr and
Rosalind A. Carr
28,303
John M. Saba, Sr., and
Gwendoline A. Saba
16,914
Richard S. Sparrow and
Barbara Sparrow
36,121
*404 In his notices of deficiency to petitioners respondent disallowed the claimed charitable contribution deductions "because it has not been established that said contribution met the requirements of section 170 of the Internal Revenue Code." Respondent also disallowed the following amounts from petitioners' 1975 income tax returns which they had treated as carryovers from the unused portions of the 1974 claimed charitable deductions: 1975 Claimed Carryover
For Unused Portion of
1974 Charitable Contri-
Name of Petitioners
bution Deduction
William A. Saba and
Teresa Z. Saba
$13,985
Robert J. Carr and
Rosalind A. Carr
16,697
John M. Saba, Sr., and
Gwendoline A. Saba
13,086
Richard S. Sparrow and
Barbara Sparrow
8,879
OPINION The issue for decision is whether petitioners are entitled to a deduction under section 170[5] for an alleged charitable contribution to the State of Florida of approximately 12.1 acres of property, known as Beer Can Island, located in Longboat Key, Florida. The parties do not question that the recipient, the State of Florida, is an acceptable beneficiary within the meaning of section 170(c)(1). [6] *405 It is clear from the terms of the deed by which Beer Can Island was conveyed to Florida that a covenant running with the land restricted use of the peninsula exclusively to "public purposes" within the meaning of section 170(c)(1). Therefore, resolution to the issue centers on whether the conveyance was a charitable contribution within the meaning of section 170. *406 On January 29, 1971, Richard S. Sparrow, Robert J. Carr, William A. Saba, and two persons not petitioners herein, leased certain parcels of land located in Longboat Key, Florida, from Frank J. Conrad and Marjorie L. Conrad. The leased properties included that accretion to the northern tip of Block 39 of the Longbeach Subdivision, known as Beer Can Island. The lease of the properties was for a term of 23 years commencing on January 29, 1971, with a purchase option granted to the lessees exercisable at any time prior to expiration of the lease. The lease provided that if the lessees exercised the purchase option, the lessors would quitclaim deed their interests in a spit of land which included Beer Can Island to the lessees. During or before 1971, a partnership, Longbeach Associates No. 1, was formed by the above lessees and by William A. Saba on behalf of John M. Saba, Sr. As potential purchasers of the leased properties, these partners considered implementation of a land use plan, completed on January 15, 1971, for the purpose of optimizing the use of the Longbeach Subdivision properties. The plan suggested that the northern portion of Beer Can Island be donated to a governmental *407 agency or charitable organization to serve as a wildlife sanctuary. On July 12, 1971, Frank J. Conrad and Marjorie L. Conrad filed with the Board a petition for disclaimer requesting the State to repudiate any interest that it might have in the spit of land or peninsula of Beer Can Island. After several hearings and numerous indications by the town of Longboat Key and Manatee County of their interests in the ownership and function of Beer Can Island, the Board refused to grant the requested disclaimer. On March 7, 1972, the Conrads filed a suit against the authorities of the State of Florida to quiet title to the peninsula which included Beer Can Island and to perpetually enjoin defendants from deeding that property to any party other than plaintiffs. On April 4, 1972, the Board discussed the Conrads' lawsuit, determined that the disclaimer application should be denied, and authorized the quitclaim deeding to Manatee County of any possible State claims to the property. While the Board did not execute a quitclaim deed at this time, Manatee County intervened as a party defendant in the suit to quiet title. Thereafter all parties continued to vigorously pursue the litigation. *408 In January 1974 the Sarasota Bank and Trust Company, as trustee of Longbeach Land Trust established by the Longbeach Associates No. 1 partnership, was substituted as the party plaintiff in the suit. Prior to December 4, 1973, the parties to the suit for injunction and to quiet title to the peninsula negotiated a proposed settlement. In January 1974 the parties submitted to the Circuit Court of the Twelfth Judicial Circuit in and for Manatee County, Florida, a stipulation for settlement. On January 22, 1974, the judge for the Circuit Court entered final judgment accepting the parties' stipulation for settlement. The settlement provided that the State of Florida would quitclaim deed the entire 19.7 acres of land to Sarasota Bank and Trust Company, as trustee. In turn, subject to a restrictive covenant that the property would be maintained in its natural state as a public recreation area closed to motorized wheeled vehicles, the Bank would convey in fee simple the northerly 12.1 acres of land, known as Beer Can Island, to the State of Florida. These conveyances were completed on March 6, 1974. As we have held on numerous occasions, *409 the term "charitable contribution" as found in section 170 is synonymous with the word "gift." DeJong v. Commissioner, 36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962); Sutton v. Commissioner, 57 T.C. 239, 242 (1971); Wolfe v. Commissioner, 54 T.C. 1707, 1713 (1970). For tax purposes, a gift is not a transfer generated from "the constraining force of any moral or legal duty" nor impelled primarily by the anticipation of the receipt of direct economic benefits. Stubbs v. United States, 428 F.2d 885, 887 (9th Cir. 1970); Grinslade v. Commissioner, 59 T.C. 566 (1973). Furthermore, where a taxpayer enters into a transfer with the expectation of the receipt of economic returns as a quid pro quo, the transfer will not qualify as a charitable contribution under section 170. E.g., Sutton, supra at 244 (where from his land conveyance the taxpayer realized additional utility and value of his remaining property); United States v. Transamerica Corporation,392 F.2d 522, 524 (9th Cir. 1968) (where the taxpayer-corporation received relief from *410 continued harassment, badgering and threats from the city, the court held that the company acted "under a form of economic duress and threatened legal compulsion"); Wolfe, supra at 1715 (where in return for transferring to the town their interests in their water and sewer lines, the taxpayers received (1) an improved water and sewer system operated and maintained by the town, and (2) increased property values). Rather, a charitable contribution is a voluntary transfer of property by the donor without the expectation or recognition of legal consideration or legal rights. Perlmutter v. Commissioner,45 T.C. 311, 317 (1965); Sutton,supra at 242. The question of whether petitioners made a gift of the property or transferred it in return for receipt of economic benefits is one of fact. Not only the subjective attitude of the grantor at the time of transfer, but also those benefits which he expects to directly and indirectly inure to him as a result of the transaction must be considered. In our view petitioners received a clear economic benefit when in return for their transfer of the 12.1 acres of Beer Can Island, they received a quitclaim deed *411 from the State to the remaining 7.6 acres of the accreted land. This quitclaim deed removed any cloud from the title to the 7.6 acres which were a part of the property covered by their quitclaim deed from the Conrads. Petitioners argue that since they received a quitclaim deed to the entire 19.7 acres from the State, they made a gift when they gave the State a deed to the 12.1 acres. However, this was merely the form taken to effect the settlement which provided for petitioners' transferring their rights, if any, in the 12.1 acres to the State in return for the State's transferring its rights, if any, in the 7.6 acres to them.As clearly shown by this record, the two transfers were the basis of the settlement of the lawsuit. The receipt by petitioners of an unclouded title to the 7.6 acres is sufficient "quid pro quo" to cause the transfer of the 12.1 acres not to be a gift. However, the record shows that other benefits were received by petitioners from the settlement. Petitioners argue that as early as 1971 they intended to donate Beer Can Island to either the town of Longboat Key, Florida, or Manatee County. In support thereof they emphasize that on approximately June 17, 1971, they *412 appeared before the Board of County Commissioners for the town of Longboat Key with an offer to donate the property to the town if it would consent to use the land as a wildlife sanctuary. Moreover, petitioners insist that in preparation for an unobstructed donation of fee simple ownership of Beer Can Island they applied for a disclaimer from the State of Florida and filed the lawsuit for injunction and to quiet title to the peninsula. The record does not support petitioners' position. Nothing in any of the documents filed in the request for disclaimer or the lawsuit in the Circuit Court states that petitioners are requesting the disclaimer in order to be able to make a valid gift of the 12.1 acres to the city, county, or State. Petitioners' reliance on their 1971 intentions is inappropriate. It is the intent at the time of transfer which is important; a grantor's intent prior to the transaction is helpful only in that it might assist the Court in determining the transferor's state of mind at the crucial time. Furthermore, "[it] scarcely needs adding that the parties' expectations *413 or hopes as to the tax treatment of their conduct in themselves have nothing to do with the matter." Commissioner v. Duberstein,363 U.S. 278, 286 (1960). Petitioners argue that the proper test for determining whether the transfer in issue is a charitable contribution is one expressed in Singer v. Commissioner,196 Ct. Cl. 90, 449 F.2d 413, 423 (1971): It is our opinion that if the benefits received, or expected to be received, are substantial, and meaning by that, benefits greater than those that inure to the general public from transfers for charitable purposes (which benefits are merely incidental to the transfer), then in such case we feel the transferor has received, or expects to receive, a quidproquo sufficient to remove the transfer from the realm of deductibility under section 170. * * * Petitioners indicate that we have "noted the Singer test with approval in Louisville and Nashville Railroad Company v. Commissioner,66 T.C. 962 (1976)," on appeal (6th Cir. 1978). [7] A careful reading of Louisville and Nashville Railroad Company,supra at 1009, shows that we stopped short of approving *414 the Singer language that equates the receipt or expected receipt of substantial benefits with "benefits greater than those that inure to the general public from the transfers." In fact, in Louisville and Nashville Railroad Company, supra at 1009, our sole reference to the Singer case reflects approval only of the test to which we have subscribed in numerous cases: that "a transfer did not qualify as a charitable contribution under section 170 if such 'transfer was made with the expectation of receiving something in return as quid pro quo'." See Marquis v. Commissioner,49 T.C. 695, 702 (1968); Perlmutter v. Commissioner,45 T.C. 311, 318 (1965); Stubbs v. United States,428 F.2d 885, 887 (9th Cir. 1970). An examination of the evidence in this case shows that regardless of the test applied, petitioners are not entitled to the claimed 1974 charitable contribution deductions. *415 Petitioners argue that settlement did not qualify them to receive anything more than that to which they were entitled--unimpeded claim to all the peninsula and the right to transfer the 12.1 acres of Beer Can Island to the State for recreational use. On the other hand, respondent asserts that petitioners did receive direct economic benefit commensurate with the value of the transferred property and that petitioners' dominant purpose was the anticipation of receipt of (1) clear title to 7.6 acres of the peninsula property, and (2) substantial appreciation in value of that adjacent upland property as a result of the conveyance of the 12.1 acres of Beer Can Island subject to the recreational restriction. As heretofore discussed, petitioners did obtain in the form of a quitclaim deed assurances from the State that thereafter it would not claim interest in the 7.6 acres or subsequent accretions thereto. Clearly petitioners further profited from the conveyance of the 12.1 acres in that the restriction to maintain the property in its natural state enhanced the aesthetic, as well as the economic, value of petitioners' adjoining property. As in several prior cases, we conclude that *416 the avoidance of "considerable and perhaps protracted difficulty" is a significant factor in the determination of whether a taxpayer has received a direct benefit from that transfer which resulted in the claimed charitable contribution. Perlmutter v. Commissioner,45 T.C. 311, 318 (1965) (where the taxpayer conveyed to the county 8 percent of the total acreage of a planned subdivision development for use for such public purposes as parks, playgrounds, and schools in order to comply with a county regulation, albeit later found unconstitutional, that required such a land transfer prior to county officials approving a subdivision plan); Pettit v. Commissioner,61 T.C. 634, 641 (1974) (where in order to gain approval of new subdivision plans a local ordinance required the availability of sufficient land to assure that all rights of way adjoining or through new subdivisions met certain width specifications, and thus to comply therewith the taxpayers dedicated 2.75 acres of their proposed development to the municipality for roadway purposes). The instant case is analogous to Perlmutter,supra, and Pettit,supra. Similar to the ostensible *417 legal impediments in those cases, here in order to legally transfer a fee simple title to the 12.1 acres of Beer Can Island to a governmental agency, petitioners first needed title unobstructed by State claims thereto. Through the Conrads petitioners attempted to confirm an unimpeded claim to the entire peninsula of Beer Can Island commencing with the July 12, 1971, filing of the application for disclaimer. After the State failed to take satisfactory action, petitioners entered into the next legal stage by filing on March 7, 1972, a lawsuit for injunction and to quiet title. That lawsuit continued until its 1974 settlement, which enabled petitioners to avoid further substantial and protracted difficulty. In fact, one of petitioners' witnesses admitted that continuation of the lawsuit to its final conclusion after a trial on the merits would have required a substantial additional expenditure of time. By specifically providing for quiet title and the conveyance of the 12.1 acres of Beer Can Island, settlement extinguished petitioners' prior handicap. Settlement alleviated further protracted monetary demands with the cessation of continued legal fees. Citing Citizens and Southern National Bank of South Carolina v. United States,243 F. Supp. 900 (W.D.S.C. 1965) *418 and Allen v. United States,541 F.2d 786 (9th Cir. 1976), petitioners argue in the alternative that the only benefits that they might have received were incidental to the substantial benefit conferred on the general public. Those cases are not apposite.In each of those cases the transferors received the same benefits as those enjoyed by the nontransferor members of the public. In fact, the Court in Citizens and Southern National Bank of South Carolina, supra at 904, stated that "at the time of the conveyances the benefit to the taxpayer's property was the same in degree and kind as to other property in the vicinity." Here from the record it appears that at the time of the conveyance of the 12.1 acres of Beer Can Island petitioners owned not only the 7.6 acres quitclaimed to them by the State, but also most, if not all, of the northerly condominium projects on the Gulf and inlet sides of Longboat Key. Therefore the evidence indicates that petitioners were the only persons having title to properties with unobstructed views of the 12.1 acres of Beer Can Island; no others shared in that type of benefit to the same degree. For the foregoing reasons, *419 we conclude that at the time of petitioners' conveyance of the 12.1 acres of Beer Can Island to the State of Florida, they expected to and did profit directly from substantial financial and nonfinancial returns--a quid pro quo. Petitioners' transfer of the 12.1 acres of Beer Can Island to the State of Florida did not constitute a charitable contribution within the meaning of section 170; accordingly, we need not address the issue raised as to the fair market value of the subject property. Decision will be entered for the respondent.
Footnotes
1. Cases of the following petitioners are consolidated herewith: Robert J. Carr and Rosalind A. Carr, docket No. 8036-78; John M. Saba, Sr., and Gwendoline A. Saba, docket No. 8037-78; Richard S. Sparrow and Barbara Sparrow, docket No. 8038-78; and William A. Saba, docket No. 8039-78.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the years in issue.↩
3. The January 29, 1971, lease described these properties as follows: PARCEL #1
Lots 5, 6, 7, 8, 9, 11 and 12, Block 35 Lots 2, 3, 12 and 13, Block 36 Lots 1, 2, 3, 4, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17 and 18, Block 37 Lots 1, 4, 5, 6, 7, 8, 11, 12, 13, 17, 18, 20, 21, 22, 23, 24 and 25, Block 38 Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14, Block 39 All located in LONGBEACH SUBDIVISION, as per plat thereof recorded in Plat Book 4, Page 6, Public Records of Manatee County, Florida. PARCEL #2
All accretions to PARCEL #1 which include the large finger of land extending northwesterly from Block 39 of the said LONGBEACH SUBDIVISION, and all partially or wholly submerged lots in LONGBEACH SUBDIVISION in which Landlord has any interest and which are located within an extension of the center line of Joy Street in a northwesterly direction and an extension of the center line of Broadway Street in a southwesterly direction.↩
4. The parties have interchangeably referred to Beer Can Island as (1) the entire spit of 19.7 acres situated at the northern tip of Block 39, and (2) the most northerly 12.1 acres of the peninsula located above a narrow neck in the spit. Hereafter all references to Beer Can Island in connection with a donation offer, or fee simple conveyance to the State of Florida or Manatee County, shall mean the northerly 12.1 acres of property. Otherwise, the reference shall include the entire 19.7 acres of the peninsula.↩
5. Section 170 provides in pertinent part: SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.
(a) Allowance of Deduction. -- (1) General rule. -- There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. ↩
6. Section 170(c)(1) states: (c) Charitable Contribution Defined. -- For purposes of this section, the term "charitable contribution" means a contribution of gift to or for the use of -- (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes.↩
7. Petitioners indicate that we also noted with approval the Singer test in Dockery v. Commissioner,T.C. Memo. 1978-63. While in Dockery,supra, we paraphrased the Singer test and referred to its approval by our decision in Louisville and Nashville Railroad Company,supra, we did not find the need to apply the Singer↩ test since we held that under any of the tests for determining whether a transfer is a charitable contribution the taxpayer would not have been entitled to the deduction.